**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 13 |
| LEVANDER L. WATSON, JR., | ) | |
| | ) | Case No. 23-30536 |
| Debtor. | ) | |
| _____ | ) | |
| LEVANDER L. WATSON, JR. and | ) | |
| JENNY P. HOLMAN, Chapter 13 Trustee | ) | |
| For the Bankruptcy Estate of Levander L. | ) | |
| Watson, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 23-03028 |
| FOREST POND HOMEOWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| BLACK, SLAUGHTER & BLACK, P.A., | ) | |
| and CCSD PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER RELATIVE TO
PLAINTIFF'S FIRST AND SECOND DISCOVERY REQUESTS
BY BLACK, SLAUGHTER & BLACK, P.A.**

Defendant Black Slaughter Black, P.A. ("BSB"), through counsel, hereby files this

*Memorandum of Law* in support of its *Motion for Protective Order Relative to Plaintiff's First and*

*Second Discovery Requests by Black, Slaughter & Black, P.A.* (the "Motion")  and in support,

respectfully shows the Court as follows:

**INTRODUCTION**

BSB, having provided any non-privileged, relevant information in response to the Debtor's

two discovery requests, brought the Motion requesting a protective order given BSB's concerns

1

that the Second Request RFPs 7, 8 and 9 are not relevant to the Debtor's claims and, with regard to Second Request RFP 7, responding would impose a substantial burden on BSB without a concomitant benefit to the Debtor.  In addition, BSB requests a protective order (a) forbidding discovery as to the communications it or its counsel has engaged in with counsel for its co-Defendants subsequent to the initiation of this Adversary Proceeding, or (b) alternatively, substantially similar to a proposed consent protective order sent to Debtor's counsel on March 21, 2024 that would limit the timeframe applicable to that request to documents reflecting communications among and between counsel for the Defendants on or before February 20, 2024.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 8, 2023, the Debtor initiated this Adversary Proceeding[1] by filing a complaint that was subsequently amended on August 17, 2023 to add the Trustee as the Debtor's co-plaintiff. The unverified Complaint alleges that the HOA, BSB, and CCSD were the recipients of an avoidable transfer of an interest of the Debtor in the Property as a result of a foreclosure sale. The Complaint does not state which of the Defendants the Debtor and the Trustee maintain was the initial transferee, or an immediate, or mediate transferee.

The Debtor's First Request was served on November 10, 2023, and BSB served its First Responses on January 19, 2024, which were supplemented on January 25, 2024, February 7, 2024, and February 16, 2024, respectively.  The First Requests included the First RFPs seeking production from BSB of documents reflecting communications between and among BSB, the HOA, and/or CCSD regarding the Debtor or the Property for the period of January 1, 2020 through the present.  BSB provided non-privileged documents responsive to the First Requests in its First Responses but asserted the common interest privilege in withholding documents reflecting

---

[1]       Capitalized terms not otherwise defined herein are defined in the Motion.

communications among or between BSB's attorneys and attorneys for the HOA and / or CCSD occurring subsequent to the commencement of the Adversary Proceeding.

The Debtor's Second Requests directed to BSB were served on January 27, 2024. Included in the Second Requests are the Second RFPs, reflecting three requests for production that seek documents relative to foreclosures that did not involve the Debtor or the Property. Specifically, the Second RFPs asked for documents regarding special proceedings involving certain "Foreclosure Homeowners," defined in the Second RFPs as individuals who were parties to foreclosure proceedings brought by their homeowners associations for past due assessments at any time during the years of 2020, 2021, 2022, 2023, and 2024 where BSB served as the trustee, counsel to the trustee and/or as counsel to the foreclosing homeowners' association. *See* Motion, Ex. 2 at 2. As to those individuals, the Second RFPs seek the following:

- Second Request RFP 7: "All documents containing or memorializing communications from you to Foreclosure Homeowners regarding the acceptance of payment plans for the satisfaction of allegedly unpaid homeowners' association dues, assessments, and related fees or charges from January 1, 2020 to the present." Motion, Ex. 2 at 9.

- Second Request RFP 8: "All documents containing or memorializing communications from you to the Foreclosure Homeowners regarding the acceptance of one or more payment plans for the satisfaction of allegedly unpaid homeowners' association dues, assessments, and related fees or charges in that action involving the foreclosure of a lien on property located at 4729 Benthaven Lane, Charlotte, North Carolina 28269 as referenced in Exhibit B attached hereto (bates labeled BSB000563)." *Id.* and Ex. B.

- Second Request RFP 9: "All documents containing or memorializing communications from you to the Foreclosure Homeowners regarding the acceptance of one or more payment plans for the satisfaction of allegedly unpaid homeowners' association dues, assessments, and related fees or charges in that action involving the foreclosure of a lien on property located at 11536 Turn Stone Court, Charlotte, North Carolina 28226 as referenced in Exhibit C attached hereto (bates labeled BSB000564)." *Id*. and Ex. C.

3

BSB responded to the Second Requests on February 19, 2024 and, with respect to the Second RFPs, lodged objections based on relevance because the "Foreclosure Homeowners" are, by definition, unrelated to the Debtor, belong to unrelated homeowners' associations, and are not otherwise involved in this litigation.  In addition, BSB objected on the grounds that it would be burdensome to produce all documents regarding communications with the "Foreclosure Homeowners," and such production would not lead to admissible evidence.

On March 5, 2024, Debtor's counsel gave notice to BSB of certain alleged deficiencies in BSB's responses to the Second Request, including with respect to the Second RFPs.  On March 7, 2024, BSB replied to the Debtor's alleged deficiencies in a letter to Debtor's counsel.

On March 15, 2024, following a hearing on March 8, 2024, the Court entered an Order setting a hearing on any motion to compel and / or motions for protective orders for April 3, 2024. In a final effort to resolve the discovery related disputes without the need for either side to seek relief from the Court, on March 21, 2024, BSB provided responses to the Second Request RFP 8 and Second Request RFP 9 to Debtor's counsel.  In addition, BSB offered to provide responses to the First RFPs subject to a proposed consent protective order.

**RELIEF REQUESTED**

BSB respectfully requests entry of a protective order relieving BSB from responding to the Second Request RFP 7.  In addition, BSB also requests a protective order (a) forbidding discovery as to the communications it or its counsel has engaged in with counsel for its co-Defendants subsequent to the initiation of this Adversary Proceeding, or (b) alternatively, substantially similar to a proposed consent protective order sent to Debtor's counsel on March 21, 2024 that would limit the timeframe applicable to that request to documents reflecting communications among and between counsel for the Defendants to on or before February 20, 2024.

**BASIS FOR RELIEF**

Rule 26 of the Federal Rules of Civil Procedure (hereinafter, "Rule 26"), made applicable here by Rule 7026 of the Federal Rules of Bankruptcy Procedure, states that the Court may, for good cause, enter appropriate protective orders to protect a party or person from, among other things, undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  Protective orders may, for example, forbid inquiry into certain matters, limit the scope of discovery to certain matters, and specify the applicable terms for discovery such as the allocation of expenses.  Fed. R. Civ. P. 26(c)(1)(B) & (D).

**ARGUMENT**

**A.      Discovery is Complete with Respect to the Facts Applicable to the Debtor's Claims Against BSB.**

Although information requested in discovery need not be admissible to be discoverable, the discovery process is nevertheless subject to limits, particularly as to relevancy, proportionality, and a cost-benefit analysis.  Thus, pursuant to Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims . . . and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(b)(1).

While the scope of discovery extends broadly to "relevant information," what constitutes relevancy is not defined in Rule 26.  *See* Rule 25(b).  The rules of evidence, however, state that evidence is relevant if it tends to make a fact that is of consequence in determining a claim more or less probable than it would be without that evidence.  *See* Fed. R. Evid. 401 (hereinafter, "Rule 401").  The question as to relevance is whether the item of evidence tends to prove the matter sought to be proved.  *See In re Hogan*, 625 B.R. 134, 141 (Bankr. D.S.C. 2020).

Courts must strive to "strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence" that may be deemed admissible at trial. *Small v. Ramsey*, 2011 U.S. Dist. Lexis 91879 *16-17 (N.D.W.Va. Aug. 17, 2011).  In that process, courts have "nearly unfettered discretion to control the timing and scope of discovery[.]" *Id*. (quoting *Hinkel v. City of Clarksburg, West Virginia*, 81 F.3d 416, 426 (4th Cir. 1996)).  For example, if the documents being sought are not probative of the claims at issue, a motion to compel those documents will be denied.  *Boykin Anchor Co. v. Wong*, 2011 U.S. Dist. LEXIS 132799, *19 (E.D.N.C. Nov. 17, 2011) (denying motion to compel production of an entire list of AT&T approved products given that the same would not be probative of plaintiff's claims for defamation and unfair and deceptive trade practices).

Indeed, although information may be discoverable pursuant to Rule 26(b) "does not mean that discovery must be had." *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).  Because discovery is not limitless, courts have the discretion to protect a party from oppression or undue burden or expense, including by ordering that discovery requests be forbidden.  *Id*. (citing Rule 26(c)).  Judges are both empowered and encouraged to prevent "fishing expeditions" or unrestrained searches "for evidence of some unknown wrongdoing," and the entry of a protective order is appropriate when discovery requests "seek[] information with the most tenuous connection to the underlaying lawsuit." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 533 (2009) (affirming a protective order denying deposition of a nonparty).

Thus, in *Sandcrest Outpatient Serv., P.A. v. Cumberland County Hosp. Sys., Inc.*, 853 F.2d 1139 (4th Cir. 1988), the District Court for the Eastern District of North Carolina granted summary judgment for the defendant-appellees on a question governmental immunity from damages after staying further discovery. *Sandcrest* at 1140.  On appeal, the plaintiff-appellant maintained that,

because discovery had been stayed, plaintiff-appellant could not obtain the necessary facts to prosecute its matter and had been prejudiced as a result. *Id*. at 1146. The Fourth Circuit disagreed, noting that "the relevant facts *were* available" for the claims set forth by plaintiff-appellant and that the plaintiff-appellant was "not entitled to further discovery merely because the relevant evidence fail[ed] to support his claim." *Id* at 1147 (emphasis in original).

Much like in *Sandcrest*, the relevant facts in this matter have been available to all parties for months. The additional discovery that the Debtor seeks to obtain is irrelevant to the claims set forth in the Complaint and would not support his claims for relief.  The Debtor should not be allowed to fish for more discovery with persistent "rummaging through… records for some evidence of unknown wrongdoing" simply because the facts and already-produced discovery do not support his claims.  *Cuomo* at 531.  As with the plaintiff in *Sandcrest*, the Debtor here should not be permitted to engage in a wasteful, unnecessary, and burdensome fishing expedition that is unrelated to the matter at hand.  Discovery has been had, and no amount of irrelevant and collateral digging by the Debtor will bring forth new facts relevant to the Debtor's claims that this Court should consider.

BSB maintains that it has thoroughly responded to the Debtor's discovery requests by providing all relevant, nonprivileged information requested in accordance with Rule 26.  *Affidavit of Steven E. Black*, ¶ 2 (hereinafter, the "Black Aff."), attached as <u>Exhibit A</u>.  For example, BSB has provided verified discovery responses including documentation or records related to the underlying foreclosure, communications with the Debtor and records of partial payments made by him, all authorizations given by the HOA to proceed with the foreclosure and documentation related to the two prior foreclosures initiated by the HOA against the Debtor.  Black Aff., ¶ 2.  BSB has further provided documentation of the communications it engaged in prior to the

commencement of this Adversary Proceeding[2] with the purchaser, CCSD, and the HOA.[3]  *Id*.  More recently, notwithstanding BSB's objection that information as to third parties is not relevant to the Debtor's Complaint, BSB provided complete responses to the Second Request RFP 8 and Second Request RFP 9. *Id*.

For these reasons, BSB contends that discovery, as it relates to the Debtor's unverified claims against BSB in this Adversary Proceeding, is complete.  *Id*.  Further discovery related to payment plans that may have been entered into in various years by other property owners that are members of other associations throughout the state has no bearing on the elements of this Debtor's claims and squanders the resources of the parties and this Court.  *Id*., ¶ 3.

**B.     Discovery Should be Denied as to Second Request RFP 7**.

The Second Request RFP 7 requests documents regarding payment plans that were entered into by "Foreclosure Homeowners" in connection with foreclosures of their property by their homeowners' associations for the period of January 1, 2020 to the present.  BSB maintains that any such files are irrelevant to the Debtor's claims in this proceeding because no responsive documents could show that BSB received a transfer of an interest that the Debtor held (or holds) in the Property.  *Id*.  Simply put, the Second Request RFP 7 fails to meet the threshold requirement of relevance, and any documents produced would be of no assistance in resolving the issues at hand in this proceeding.  *Id.*

Further, complying with the full extent of Second Request RFP 7 would be exceedingly difficult, time-consuming, and costly.  *Id*., ¶ 5.  Responding would require manual examination of

---

[2]     While it has objected to the production of its communications with counsel for the other Defendants on the basis of the common interest doctrine, BSB recently offered to produce such communications subject to the terms of a proposed consent protective order.  *Id*.

[3]     BSB's communications with the HOA were initially withheld at the direction of the HOA on the basis of attorney-client privilege.  However, those communications were promptly produced by BSB as soon as the HOA waived its objection.  *Id*.

over two thousand files in which a foreclosure was initiated to determine first whether a payment plan had or had not been entered into and, if so, to then find and gather documents regarding any such payment plan. *Id.*, ¶¶ 5-6.   BSB estimates that, accomplishing three (3) reviews an hour and working on nothing else for an eight (8) hour workday, it would take not less that eighty-five (85) days for a paralegal to accomplish such a review—again, with potential additional time required to search for documentation related to any payment plans identified—at a cost of not less than $102,000 (calculated based on an average rate of $150 per hour). *Id.*, ¶ 8. In addition, while performing such review, any paralegal would be unable to perform their normal or routine daily work, which would inconvenience and delay services to homeowners and HOAs and further adversely impact the revenues collected or generated by BSB. *Id.*  In sum, the cost to BSB of responding to Second Request RFP 7 would be massive while the end result could not possibly generate admissible evidence to support the Debtor's claim for an alleged avoidable transfer of the Property. *Id.*, ¶ 9.  Therefore, BSB requests that the Court forbid discovery as to this request. *Id.*

### C.      Any Further Discovery as to the First Requests Should be Limited.

Again, the First RFPs in the First Requests seek documents reflecting communications between and among BSB, the HOA, and/or CCSD regarding the Debtor or the Property for the period of January 1, 2020 through the present.  BSB has asserted the common interest privilege in withholding the Protected Documents reflecting communications among or between the Defendants' attorneys.

The common interest privilege is "an extension of the attorney-client privilege" aimed at protecting "communications between parties who share a common interest in litigation." *Twin City Fire Ins. Co. v. Axis Ins. Co.*, 2023 U.S. Dist. LEXIS 220581,  at  7 (quoting *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005)).  Application of the doctrine is not

9

determined by or limited to instances in which parties have entered into a formal, written joint defense agreement; rather, its application is based on the long-standing principle, recognized and adopted by the Fourth Circuit, that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other in order to more effectively prosecute or defend their claims without waiving privileged attorney-client communications." *Id.* (quoting *LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings*, 209 F.R.D. 112, 115 (D. Md. 2002) at 116. "The Fourth Circuit has determined that it also applies to work product." *Id.* (quoting *In Re Grand Jury Subpoenas 89-3 and 89-4*, 902 F.2d 244, 249 (4th Cir. 1990)).

Here, the Debtor has been provided with all communications between or amongst the Defendants prior to the commencement of litigation, yet he continues to seek the production of privileged communications between counsel for the parties arising and occurring *after* the commencement of this litigation. The Defendants in this Adversary Proceeding have a common interest in this litigation as they are alleged to have participated in a fraudulent transfer. Each has denied the allegations of the Debtor, and the filings in this case show that the Defendants have pursued a common legal strategy as this Adversary Proceeding has progressed. As in *Twin City*, counsel for Defendants should be able communicate with each other, gather information, and develop legal strategies without fear of discovery in order to effectively defend the claims against their respective clients. There is no substantial need for the Debtor to obtain the sought after communications of counsel during the course of the litigation that would override the common interest privilege.

BSB further maintains that the production of documents showing comments that the Defendants' attorneys have made to each other will not advance the Debtor's claims. Black Aff.,

10

¶10 . No such documents would or could show that BSB received an avoidable transfer of property of the Debtor. *Id.* The voluminous documentation, including those documents filed and of public record in the underlying state court foreclosure action, produced to the Debtor throughout the discovery period show that BSB never received a transfer—avoidable or otherwise—of the Property of the Debtor. *Id.* Further production of the communications amongst counsel to the Defendants during this Adversary Proceeding would not and could not show otherwise. *Id.*

Hence, BSB requests a protective order (a) forbidding discovery as to the communications it or its counsel has engaged in with counsel for its co-Defendants subsequent to the initiation of this Adversary Proceeding, or (b) alternatively, substantially similar to a proposed consent protective order sent to Debtor's counsel on March 21, 2024 that would limit the timeframe applicable to that request to documents reflecting communications among and between counsel for the Defendants on or before February 20, 2024.

### D.      A Protective Order is Called for in this Case.

Entry of a protective order is within the court's discretion in instances where the party seeking discovery will not be substantially prejudiced if discovery is denied. *M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993). In determining whether to issue a protective order, "courts balance (1) the relevance of the information sought, (2) the need of the information sought, (3) issues concerning confidentiality, and (4) the potential for harm to any party." *Voit Techs., LLC v. Del-Tone, Inc.*, 2019 U.S. Dist. LEXIS 125431, *4 (E.D.N.C. July 26, 2019) (citing *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 432 (W.D.N.C. 2005)). Issuance of a protective order is appropriate when a party has demonstrated good cause for that relief through a particularized showing of the basis for the party's request. *See In re Hogan*, 625 B.R. 134, 145 (Bankr. D.S.C. 2020).

BSB maintains that good cause supports entry of a protective order forbidding discovery as to the Second Request RFP 7.  BSB's particularized showing includes estimations as to the costs that would be involved based on the tasks that would be required.  *See* Black Aff., ¶ 6-9.  Moreover, there is no indication that any documents relative to the "Foreclosure Homeowners" could provide relevant information, much less information that would meet the standard for admissibility in Rule 401.  Id.  Rather, BSB maintains that the focus should be on discovery that is likely to advance this case the cost of which does not outweigh the benefits.  *See* Rule 26(b).

In addition, BSB asserts that good cause supports the entry of a protective order (a) forbidding discovery as to the communications it or its counsel has engaged in with counsel for its co-Defendants subsequent to the initiation of this Adversary Proceeding or (b) alternatively, substantially similar to a proposed consent protective order sent to Debtor's counsel on March 21, 2024 that would limit the timeframe applicable to that request to documents reflecting communications among and between counsel for the Defendants on or before February 20, 2024.

## CONCLUSION

For these reasons, BSB respectfully requests that the Court enter a protective order limiting the scope of discovery to those issues relevant to the foreclosure of the Debtor's Property so as to forbid discovery as to unrelated third parties who have been subject to a foreclosure action.  In addition, BSB requests a protective order (a) forbidding discovery period communications it or its counsel has engaged in with counsel for its co-Defendants subsequent to the initiation of this Adversary Proceeding or (b) alternatively, substantially similar to a proposed consent protective order sent to Debtor's counsel on March 21, 2024 that would limit the timeframe applicable to that request to documents reflecting communications among and between counsel for the Defendants on or before February 20, 2024.

This is the 26th day of March, 2024.

/s/ A. Cotten Wright
A. Cotten Wright (N.C. State Bar No. 28162)
Grier Wright Martinez, PA
521 E Morehead Street, Suite 440
Charlotte, North Carolina 28202
704.375.3720 Telephone
704.332.0215 Fax
cwright@grierlaw.com

*Attorneys for Black, Slaughter & Black, P.A.*

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 13 |
| LEVANDER L. WATSON, JR., | ) | |
| | ) | Case No. 23-30536 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| LEVANDER L. WATSON, JR. and | ) | |
| JENNY P. HOLMAN, Chapter 13 Trustee | ) | |
| For the Bankruptcy Estate of Levander L. | ) | |
| Watson, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 23-03028 |
| FOREST POND HOMEOWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| BLACK, SLAUGHTER & BLACK, P.A., | ) | |
| and CCSD PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**AFFIDAVIT OF STEVEN E. BLACK
FOR DEFENDANT BLACK, SLAUGHTER & BLACK, P.A.**

NOW COMES Steven E. Black for Black, Slaughter & Black, P.A. ("BSB"), being duly sworn, who deposes and says as follows:

1.      I am an attorney and Partner within the law firm of Black, Slaughter, & Black, P.A ("BSB"), where I have practiced law for approximately twenty-five (25) years. In particular, my practice focuses on homeowner and condominium associations, and I head our firm's assessment collection practice. This Affidavit is provided in support of the *Motion for Protective Order Relative to Plaintiff's First and Second Discovery Requests by Black, Slaughter & Black, P.A.* (the "Motion") and the *Memorandum of Law* in support of the Motion.

2.      BSB has thoroughly responded to the discovery requests made on behalf of the Debtor[1] in this Adversary Proceeding. For example, I have previously verified discovery responses including documentation or records related to the underlying foreclosure, communications with the Debtor and records of partial payments made by him, and all

_____

[1]      Capitalized terms not otherwise defined herein are defined in the Motion.

authorizations given by the HOA to proceed with the foreclosure and documentation related to the two prior foreclosures initiated by the HOA against the Debtor. BSB has further provided documentation of the communications it engaged in, prior to the commencement of this Adversary Proceeding with the purchaser and the HOA. More recently, notwithstanding BSB's objection that information as to third parties is not relevant to the Debtor's Complaint, BSB provided complete responses to the Second Requests RFP 8 and the Second Request RFP 9.

3.      BSB contends that discovery, as it relates to the Debtor's unverified claims against BSB in this Adversary Proceeding, is complete. Further discovery related to payment plans that may have been entered into in various years by other property owners that are members of other associations throughout the state has no bearing on the elements of the Debtor's claims. Any such files are irrelevant to the Debtor's claims in this proceeding because no responsive documents could show that BSB received a transfer of an interest that the Debtor held (or holds) in the Property. The Second Request RFP 7 fails to meet the threshold requirement of relevance, and any documents produced would be of no assistance in resolving the issues at hand in this proceeding.

4.      In connection with our firm's assessment collection practice for dues and other sums owed to homeowner associations ("HOAs"), we have developed and utilized proprietary software and platforms not available for purchase on the retail market.

5.      In connection with Request No. 7 of Plaintiff's Second Requests for Production of Documents to BSB, complying with the full extent of Second Request RFP 7 would be exceedingly difficult, time consuming, and costly. I have examined our software and platform and conferred with our IT professionals. Unfortunately, our software and platform is not designed to run a report or search to gather or identify all collection accounts in which a homeowner, whether a part to a foreclosure action or not, entered into a payment plan. As such, to identify all accounts pertinent to Request No. 7, our firm would be required to manually examine each and every foreclosure account and its related electronic file to see if a payment plan was entered into and, if one was, to search for documentation responsive to the Plaintiff's request.

6.      For the years 2020, 2021, 2022, 2023 and 2024 (to date), our firm was involved in, either as counsel for the HOA, trustee or both as allowed by law, at least 417, 456, 493, 610 and 70, respectively, foreclosure actions within the State of North Carolina.

7.      I estimate that it would take a paralegal, working in our HOA department and familiar with our software and platforms, approximately twenty (20) minutes per file to pull and conduct such review and that additional time may be required to search for documentation related to any payment plans identified.

8.      Hence, I estimate that, accomplishing three (3) such reviews an hour and working on nothing else for an eight (8) hour workday, it would take not less than eight-five (85) days for a paralegal to accomplish such review – again, with potential additional time required to search for documentation related to any payment plans identified – at a cost of not less than $102,000.00 (calculated based upon their average hourly charge or fee of $150.00per hour). In addition, while performing such review, any paralegal would be unable to perform their normal or routine daily

work, which would inconvenience and delay services to homeowners and HOAs and further adversely impact the revenues collected or generated by our firm for our legal services. It would also be necessary for me to assist and oversee the process for an estimated thirty minutes per day adding an additional $16,362.50 in costs (calculated based on my hourly rate of $385.00 per hour).

9.     In sum, the cost to BSB of responding to the Second Request RFP 7 would be massive while the end result could not possibly generate admissible evidence to support the Debtor's claims for an alleged avoidable transfer of the Property. Therefore, BSB is requesting that the Court forbid discovery as to this request.

10.     BSB further maintains that the production of documents showing comments that the Defendants' attorneys have made to each other will not advance the Debtor's claims. Indeed, no such documents would or could show that BSB received an avoidable transfer of property of the Debtor. The voluminous documentation—including documents filed and of public record in the underlying state court foreclosure action—produced to the Debtor previously show that BSB never received a transfer of property of the Debtor. Further production of the communications amongst counsel to the parties during this Adversary Proceeding would not and could not show otherwise.

FURTHER AFFIANT SAYETH NOT.

This the _22_ day of March, 2024.

_____
STEVEN E. BLACK

Sworn to and subscribed before me this the

_22ⁿᵈ_ day of _March_ , 20 _24_ .

_Virginia Dyer_____
Notary Public
My Commission expires: _5/30/2028_