IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| **LEVANDER L. WATSON, JR.,** | ) | |
| | ) | Case No. 23-30536 |
| Debtor. | ) | |
| | ) | |
| **LEVANDER L. WATSON, JR. and** | ) | |
| **JENNY P. HOLMAN, Chapter 13 Trustee for** | ) | |
| **the Bankruptcy Estate of Levander L. Watson,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 23-03028 |
| | ) | |
| **FOREST POND HOMEOWNERS** | ) | |
| **ASSOCIATION, INC., BLACK, SLAUGHTER** | ) | |
| **& BLACK, P.A.; and CCSD** | ) | |
| **PROPERTIES, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO COMPEL DISCOVERY FROM DEFENDANT
BLACK, SLAUGHTER & BLACK,  P.A.**

Debtor-Plaintiff Levander L. Watson, Jr. (the "Debtor") hereby moves the court pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37 (made applicable to this adversary proceeding by Bankruptcy Rules 7026, 7033, 7034, and 7037) for the entry of an order compelling defendant Black, Slaughter & Black, P.A. ("BSB") to fully respond to his written discovery requests as set forth below, and awarding the Debtor the attorneys' fees and costs he incurred in bringing this motion.  In support of his motion, the Debtor shows the Court as follows:

MWH: 10802.001; 00029537.1

**BACKGROUND**

1.      The Debtor purchased a house and lot located at 6308 Forest Pond Drive, Charlotte, North Carolina (the "Property") in December of 2011, where he has continuously resided since that time.

2.      The Property is encumbered by a deed of trust in favor of Wells Fargo Bank, N.A., securing a debt of approximately $92,000.00.

3.      The Property has a tax value of $328,100.00.  Accordingly, the Debtor's equity interest in the Property is at least $236,000.00.

4.      Defendant Forest Pond Homeowners Association (the "HOA") commenced a foreclosure action against the Property in Mecklenburg County on March 2, 2022, to execute on a lien for assessments of $970.00 allegedly owed by the Debtor.

5.      The HOA retained Defendant Black, Slaughter & Black, P.A. ("BSB") to serve as trustee to conduct the foreclosure.

6.      The Debtor attempted to pay the full amount claimed to BSB on two occasions in May and June of 2022.  In both instances, the Debtor had sufficient funds in his checking account to pay the asserted debt in full, and communicated to BSB that he wished to do so.  On both occasions BSB accepted funds from the Debtor's account via debit card.  The Debtor understood these debits, in the total amount of $2,066.48, satisfied the entire indebtedness asserted by the HOA.

7.      However, a foreclosure hearing took place eight months' later on February 27, 2023, at which time the clerk authorized a sale of the Property.  BSB then auctioned the Property on or about April 20, 2023.  Upon information and belief, Defendant CCSD Properties, LLC

("CCSD") submitted the highest bid of $2,359.23 on April 21, 2023.  BSB subsequently deeded the Property to CCSD on June 1, 2023.

8.     The Debtor did not learn about the purported sale of his Property until after the statutory 10-day upset period.

9.     The Debtor filed for relief under Chapter 13 on August 2, 2023 (the "Petition Date").  He then worked with the Chapter 13 trustee to file the instant adversary proceeding on August 8, 2023, challenging the foreclosure sale as a fraudulent transfer.

**THE DEBTOR'S DISCOVERY REQUESTS**

***First Set of Interrogatories and Request for Production***

10.     The Debtor timely served his *First Set of Interrogatories and Request for Production of Documents* upon BSB on November 10, 2023, seeking information regarding persons with knowledge of the facts alleged in the pleadings, expert witnesses, information regarding the parties' interactions prior to the alleged sale, and accountings of amounts purportedly owed by the Debtor.[1]

11.     The Debtor's first discovery also sought verification of statements made by the defendants in the wake of his bankruptcy filing.  For example, BSB asserted in its Answer that the Debtor entered into a "payment plan" to resolve the pending foreclosure action against the Property.  BSB alleged that the Debtor agreed to pay $3,154.72 in four installments pursuant to this plan.  *Answer of Black, Slaughter & Black, P.A. to Amended Complaint*, ¶ 27 [Doc. 24].  However, the Debtor has no knowledge of any "payment plan" and denies the existence of such an agreement.

---

[1] All of the parties' formal discovery requests and responses are not attached as exhibits to this Motion, but will be available at any hearing in this matter.  Other pertinent documents, including the parties' correspondence on BSB's discovery deficiencies, are attached as Exhibits A-H and are incorporated herein by reference.

12.     BSB served its *Objections and Responses of Black, Slaughter & Black, P.A. to Plaintiff's First Set of Interrogatories and Request for Production of Documents* on January 19, 2024. The initial responses were accompanied by a document production purportedly responsive to the Debtor's requests.

13.     BSB then served its *Supplemental Objections and Responses of Black, Slaughter & Black, P.A. to Plaintiff's First Set of Interrogatories and Request for Production of Documents* on January 25, 2024. The supplemental responses were accompanied by additional documents, including correspondence related to two additional foreclosures in which BSB ultimately sold the properties at issue to defendant CCSD.

14.     Upon review, the Debtor noted certain deficiencies in BSB's initial and supplemental responses (together, the "Initial Responses"). These deficiencies were described in a letter sent by the undersigned to BSB's counsel on January 31, 2024 (the "First Deficiency Letter").

15.     The deficiencies noted by the Debtor included (a) incomplete information related to identification of persons with knowledge of the case, (b) the repeated use of stock, boilerplate objections, (c) a failure to disclose whether responsive materials were withheld on the basis of stated objections as required by Federal Rule of Civil Procedure 34(b)(2)(C), (d) unsubstantiated claims of attorney-client privilege and work product immunity, and (e) lack of verification pursuant to Federal Rule of Civil Procedure 33(b)(3).

16.     The Debtor requested that BSB review its responses and respond to the Debtor's concerns in a week's time. A copy of the First Deficiency Letter is attached as Exhibit A and incorporated herein by reference.

17.     BSB responded to the First Deficiency Letter in writing on February 7, 2024 (the "First Deficiency Response").  In the First Deficiency Response, BSB stood by its objections and privilege claims as set forth in its Initial Responses.  BSB also included a second supplemental response to the Debtor's Interrogatory No. 5 (seeking contact information for persons with knowledge) and Request for Production Nos. 6-9 and 13, as well as an executed verification and privilege log.  A true and accurate copy of the First Deficiency Response is attached as Exhibit B and incorporated herein by reference.

18.     Unfortunately, BSB's First Deficiency Response did not address many of the fundamental points raised in the Debtor's First Deficiency Letter.  For example, the majority of the supplemental responses to the identified requests for production merely added a reference to the newly provided privilege log, but were otherwise unchanged.  Other unresolved issues included, but were not limited to, the use of boilerplate objections, failure to disclose whether otherwise responsive documents were withheld on the basis of asserted objections, and, most notably, improper claims of attorney-client privilege.

19.     The Debtor wrote to BSB's counsel again on February 9, 2024 in an effort to resolve its ongoing concerns over the discovery responses (the "Second Deficiency Letter").  A true and accurate copy of the Second Deficiency Letter is attached as Exhibit C and incorporated herein by reference.

20.     In the Second Deficiency Letter, the Debtor outlined the specific problems posed by BSB's individual responses to each numbered interrogatory and request for production in painstaking detail.  The Debtor then proposed various means to remedy the highlighted shortcomings, including the execution of an affidavit clarifying that all responsive, non-privileged materials had, in fact, been provided; and the filing of a motion to compel to address

BSB's troublesome claims of attorney-client privilege (upon which the parties have starkly opposed viewpoints).

21.     BSB responded to the Second Deficiency Letter in writing on February 16, 2024 (the "Second Deficiency Response").  A true and accurate copy of the Second Deficiency Response is attached as Exhibit D and incorporated herein by reference.

22.     BSB provided certain contact information for persons with knowledge in the Second Deficiency Response, and sought to assure the Debtor that BSB "believed" it had produced all responsive materials in its possession.  However, BSB also produced additional documentation in response to the Debtor's document requests with its Second Deficiency Response, leading the Debtor to doubt the sufficiency of BSB's unilateral belief.

23.     Equally problematic, BSB offered explanations for certain of its prior written responses that rendered its stated objections unnecessary.  According to the Second Deficiency Response, in multiple instances BSB could have simply stated it had no responsive information in the first place, rather than interposing boilerplate objections and confusingly failing to state whether responsive documents were withheld in violation of Rule 34(b)(2)(C).

24.     Moreover, BSB still contended that certain communications sought by the Debtor were undiscoverable pursuant to the attorney-client privilege, the "common interest doctrine," or on the basis of still other unwithdrawn objections.

25.     On March 4, 2024, BSB supplemented its Initial Responses a third time, providing revised answers to the Debtor's Interrogatory Nos. 9-10, Request for Production Nos. 1 and 5-14, and producing some 70 pages of new documents (the "Third Supplemental Response").  The Third Supplemental Response was accompanied by a revised privilege log and

an affidavit (presumably in response to the suggestion made in the Debtor's Second Deficiency Letter).

26. A true and accurate copy of the Third Supplemental Response (without the accompanying document production) is attached as Exhibit E and incorporated herein by reference.

27. BSB's tendered affidavit (included in Exhibit E), while helpful in narrowing the issues between the parties, is not the definitive document proposed by the Debtor in his earlier correspondence. The affidavit sets forth categories of documents withheld on the basis of certain objections. But the affidavit then states there are no other documents "knowingly withheld" by BSB. It also adds that if other responsive documents come to BSB's attention in the future, they will be "promptly produced or the privilege log will be updated …"

28. Thus, the affidavit is little more than a hedge against inadequate answers. It does not provide the guarantee sought by the Debtor: namely, that *all* responsive materials (other than those delineated as having been withheld subject to specific objections), have in fact been fully produced by BSB.

### *Second Set of Interrogatories and Request for Production*

29. In the midst of the foregoing disputes, the Debtor served his *Second Set of Interrogatories and Request for Production of Documents* upon BSB on January 27, 2024. This short set of requests was driven by BSB's earlier responses and focused on its allegation that the Debtor entered into a "payment plan" that he subsequently breached, and BSB's assertion of an attorney-client relationship with the HOA.

30. BSB served its *Objections and Responses of Black, Slaughter & Black, P.A. to Plaintiff's Second Set of Interrogatories and Request for Production of Documents* (the "Second

Responses") on February 19, 2024.  In the Second Responses, BSB again raised stock, boilerplate objections in its answers, declined to produce information on the grounds of privilege, and failed to state whether responsive materials were withheld on the basis of its objections.

31.    Of particular note, BSB objected to producing any correspondence between it and "Foreclosure Homeowners" (a defined term referring to homeowners subject to association lien foreclosures in which BSB served as trustee) regarding the acceptance of "payment plans" to resolve the amounts claimed.  BSB objected even when the requests at issue focused on two specific foreclosure proceedings identified in its prior discovery responses.

32.    The Debtor wrote to BSB's counsel on March 5, 2024, explaining its concerns over the Second Responses (the "Third Deficiency Letter").  A true and accurate copy of the Third Deficiency Letter is attached as Exhibit F and incorporated herein by reference.

33.    BSB responded to the Third Deficiency Letter in writing on March 7, 2024 (the "Third Deficiency Response").   In its Third Deficiency Response, BSB produced a handful of additional documents and yet another updated privilege log.  The defendant also offered its rationales for many of its objectionable responses and reiterated its assurances that all responsive materials had been produced.  But BSB still did not amend its prior answers to state whether responsive documents were withheld on the basis of its objections.

34.    Likewise, BSB steadfastly refused to produce any settlement correspondence with other Foreclosure Homeowners, arguing the Debtor's requests on this topic were overly broad, unduly burdensome, harassing, and irrelevant.  A true and accurate copy of the Third Deficiency Response is attached as Exhibit G and incorporated herein by reference.

35. Most recently, on March 21, 2024, BSB wrote to the undersigned proposing to produce a subset of the materials it has previously withheld on the grounds of "common interest" privilege and relevance - provided the Debtor will execute an onerous protective order that not only requires the production of such materials covering a narrow, delineated timeframe only, but also limits how the Debtor may utilize the limited materials so produced.

36. Troublingly, BSB's "offer" extends to particular requests in response to which BSB has not previously even asserted the common interest privilege (leading the Debtor to question the reliability of any statements regarding what BSB has or has not withheld).  In addition, BSB's correspondence corrected the admitted inaccuracy of at least one of its prior discovery answers.  This latest correspondence only strengthens the Debtor's conviction that Court intervention is necessary to compel BSB to meet its discovery obligations.

## RELIEF REQUESTED

37. The Debtor requests entry of an order: (a) compelling BSB to produce documents it incorrectly contends are subject to immunity from discovery by the attorney-client privilege, the work product immunity, and/or the common interest privilege; (b) compelling BSB to produce its communications with Foreclosure Homeowners regarding payment plans; (c) overruling BSB's objections with respect to the foregoing materials; (d) excluding information not timely produced from admission as evidence; and (e) awarding the Debtor his fees and costs associated with the filing and prosecution of this motion.

## BASES FOR REQUESTED RELIEF

### *Communications With Trustee Regarding Foreclosure are Not Privileged*

38. In his first set of discovery requests, the Debtor propounded requests for production seeking, among other things, the following:

(a)    communications between BSB and the HOA regarding the property at issue in this adversary proceeding from May 12, 2021 through the present (RPD No. 6);

(b)    communications between BSB and the HOA regarding the Debtor from May 12, 2021 through the present (RPD No. 7);

(c)    communications between BSB and CCSD regarding the Property from January 1, 2020 through the present (RPD No. 8);

(d)    communications between BSB and CCSD regarding the Debtor from January 1, 2020 through the present (RPD No. 9);

(e)    communications between BSB and the Mecklenburg County Clerk of Court regarding the disputed foreclosure proceeding (RPD No. 10);

(f)    communications between BSB and the Mecklenburg County Clerk of Court regarding the Property from January 1, 2020 through the present (RPD No. 11);

(g)    communications between BSB and the Mecklenburg County Clerk of Court regarding the Debtor from January 1, 2020 through the present (RPD No. 12);

(h)    communications between BSB and any other person or entity regarding the disputed property from January 1, 2020 through the present (RPD No. 13); and

(i)    communications between BSB and any other person or entity regarding the Debtor from January 1, 2020 through the present (RPD No. 14).

39.    BSB has consistently objected to the foregoing requests on the grounds of attorney-client privilege and/or work product.  The Debtor has taken BSB to task on these objections, in the first instance because communications with non-clients including, but not limited to, the Clerk of Superior Court are neither subject to the attorney-client privilege nor the work product immunity.

40.    Further, BSB served as the trustee in the foreclosure proceeding at issue in this adversary proceeding, which began on May 12, 2021.  By statute in North Carolina, a trustee in a

nonjudicial lien foreclosure "shall have the same fiduciary duties and obligations as a trustee in the foreclosure of a deed of trust."  N.C. Gen. Stat. § 47F-3-116(f)(6).

41.     In the context of a mortgage foreclosure, communications with a trustee in any way related to the underlying deed of trust are not privileged – even when the trustee serves as counsel for the communicating party – due to the trustee's fiduciary duties as agent for all parties.  *See Anderson v. Brokers, Inc. (In re Brokers, Inc.)*, 2006 Bankr. LEXIS 5033, *7 (Bankr. M.D.N.C. March 27, 2006) (finding creditor-client's communications with attorney-trustee to be non-privileged).  "'In deed of trust relationships, the trustee is a disinterested third party acting as the agent of both the debtor and the creditor.'"  *Id.* (citing *In re Foreclosure of Real Property for 143,600.00*, 156 N.C. App. 477 (2003)).

42.     The Debtor therefore properly contended that BSB could not shield its communications regarding the Debtor, his property, or the underlying foreclosure itself with third parties during the pendency of the foreclosure case.

43.     Accordingly, in its Third Supplemental Response to the Debtor's initial discovery, BSB appears to *waive* its prior claims of attorney-client privilege and/or work product immunity, at least as to communications preceding the institution of this adversary proceeding.  Its latest responses to RPD Nos. 6-14 either contain no privilege objection or state only revised, narrower privilege objections related to BSB's communications with its own counsel or with counsel to the other defendants in this action (*i.e.*, under the common interest privilege).

44.     It is less than clear from the multiple, revised privilege logs that BSB has provided on three occasions in response to the Debtor's deficiency correspondence, however, that the Debtor's reading of BSB's latest responses is correct.  For example, the BSB affidavit states it has withheld documents "reflected and identified in the privilege log updated and

provided to Plaintiff's counsel on or about March 4, 2024." It is unclear from this statement whether the withheld documents listed in BSB's *prior* privilege logs have all been produced, or if they remain withheld along with those set forth in the "updated" log provided on March 4th with the Third Supplemental Response.

45. The Debtor therefore asks that the Court require BSB to clarify whether this is the case. Alternatively, if BSB cannot or will not clarify that the documents withheld and listed in its prior privilege logs have been provided, the Debtor asks that the Court order BSB to produce all responsive communications with the HOA, CCSD, and the Clerk of Superior Court during the pendency of the underlying foreclosure action in which it served as trustee.

### *The Defendants Do Not Share a Common Interest that Shields Their Communications*

46. BSB also asserted in its latest responses to RPD Nos. 8, 9, 13, and 14 that it may withhold certain communications with counsel for the HOA and CCSD under the "common interest" privilege.[2]

47. The common interest privilege "is an extension of the attorney-client privilege that allows individuals with a common interest in litigation to [communicate] with each other and their attorneys without waiving the attorney-client privilege." *Synovus Bank v. Karp*, 2013 U.S. Bankr. LEXIS 105772, *12, 2013 WL 3927604 (W.D.N.C. July 29, 2013).

48. For the common interest privilege to apply, the shared communication or information must first satisfy the attorney-client privilege or work product doctrine. *Id.* at *13 (citing authorities). In addition, the party asserting the common interest privilege must also demonstrate that "'(1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of an in furtherance of the joint legal effort, and (3) the

---

[2] Confusingly, the March 21, 2024 correspondence from BSB's counsel also indicates that documents have been withheld on this basis in response to RPD Nos. 6 and 7, although BSB's written responses to those requests do not assert the common interest privilege. *See* attached Exhibit E.

privilege has not been waived.'" *Id.* (citing *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 243 (E.D.N.C. 2010)).

49.     A party cannot establish a common interest "by relying solely on counsel's conclusory allegation that the communications were privileged based on the common interest in the litigation." *Id.* (citations omitted).

50.     Rather, the proponent of the privilege has the burden of demonstrating its applicability. *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986); *see also Billips v. Benco Steel, Inc.*, 2011 U.S. Dist. LEXIS 101447, *3, 2011 WL 4005933 (W.D.N.C. Sept. 8, 2011) ("the burden of proof is with a party objecting to discovery to establish that the requested production should not be permitted").  As stated in greater detail by the Middle District of North Carolina:

> It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all.  [The proponent] is required to disclose the identity and position of all in attendance at the joint meetings, and to establish that the meetings were, in fact, between attorneys and their respective "corporate clients," as opposed to simply witnesses. Additionally, [the proponent] is obligated to explicitly define the nature and scope of the interest (identical or merely similar) it allegedly has in common … and specify the extent any legal interests overlapped with commercial interests of other conversations.

*Byrnes*, 111 F.R.D. at 71-72 (citations omitted).

51.     Thus, the proponent must establish, in detail, that the parties have a "common interest about a legal matter." *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 124 (4th Cir. 1994).  It is insufficient to satisfy this high bar that attorneys for different clients merely possess "a shared desire to see the same outcome in a legal matter." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).  Instead, the communication at issue must be made in pursuit of a demonstrated, joint strategy and in accordance with an actual agreement. *Id.*

52. BSB cursorily states in its discovery answers that it is not obligated to produce otherwise responsive communications with CCSD or the HOA during this adversary proceeding "on the grounds that it calls for the production of communications protected by the common interest doctrine." Such a conclusory allegations falls far short of the detailed, factual foundation necessary to support a claim of common interest privilege pursuant to *Sweeney*, *Byrnes*, and *Billips*, *supra*. BSB has made no effort to establish the contours of the defendants' alleged agreement, to produce evidence of its existence, or to define their allegedly shared interest.

53. Moreover, BSB cannot realistically establish that the three defendants actually share an identical legal interest in this matter. The HOA was merely a pre-petition creditor of the Debtor seeking to collect a nominal claim. CCSD, on the other hand, asserts record title to the disputed real estate as the prevailing buyer at a foreclosure sale. Tellingly, CCSD has also proposed to unilaterally resolve this litigation -- without the participation of either of its co-defendants. *See Motion to Approve Settlement* [Doc. 45] (further demonstrating the distinct nature of its interest as compared to that of BSB or the HOA).

54. Finally, BSB held fiduciary duties to both the Debtor and the HOA in its role as foreclosure trustee, with unique legal obligations that neither the HOA nor CCSD possessed. Indeed, BSB has vigorously asserted that, unlike CCSD, it cannot be liable in this matter because, in its view, it was not the recipient of a transfer at all.

55. Thus, the *legal* interests of the various defendants in the outcome of this litigation are starkly different from one another. They may share a common desire to see the Debtor lose, but the impacts upon each if he is successful are very different. Accordingly, the defendants do not share an identical *legal* interest that supports a claim of common interest privilege. *See ServiceMaster of Salina, Inc. v. United States*, 2012 U.S. Dist. LEXIS 53399, *11-12, 2012 WL

1327812 (D. Kan. April 17, 2012) (finding no common interest when litigation would not have identical tax impact on party opposing discovery as it would have on litigation plaintiffs).

56.     Accordingly, the documents and/or communications BSB seeks to exclude from discovery are not subject to a valid claim of common interest privilege, and it waived any other protection that might be afforded to those materials when they were shared with the other defendants.

57.     The Debtor therefore requests that the Court order BSB to produce those materials it incorrectly contends are protected by the common interest privilege.

### *BSB's Objections to Production of Settlement Correspondence Lack Merit*

58.     In its Second Responses, BSB objects to producing the following:

(a)     communications between BSB and Foreclosure Homeowners regarding the acceptance of payment plans for the satisfaction of allegedly unpaid homeowners' association dues, assessments, and related fees or charges from January 1, 2020 to the present (RFP No. 7);

(b)     communications between BSB and Foreclosure Homeowners regarding the acceptance of payment plans for the satisfaction of allegedly unpaid homeowners' association dues, assessments, and related fees or charges in that action involving the foreclosure of a lien on property located at 4729 Benthaven Lane, Charlotte, North Carolina 28269 as referenced in Exhibit B attached hereto (bates labeled BSB000563) (RFP No. 8); and

(c)     communications between BSB and Foreclosure Homeowners regarding the acceptance of payment plans for the satisfaction of allegedly unpaid homeowners' association dues, assessments, and related fees or charges in that action involving the foreclosure of a lien on property located at 11536 Turn Stone Court, Charlotte, North Carolina 28226 4729 Benthaven Lane, Charlotte, North Carolina 28269 as referenced in Exhibit C attached hereto (bates labeled BSB000564) (RFP No. 9).

59.     "Foreclosure Homeowners" are defined in the Debtor's second set of discovery requests to BSB as "persons that are or were respondents in special proceeding actions in the State of North Carolina wherein (1) a homeowners' association seeks or sought to foreclose a

lien for past due assessments, and (2) [BSB] serves or served as trustee, counsel to the trustee, and/or as counsel to the foreclosing homeowners' association in such action."

60.     The exhibits referenced in Request for Production Nos. 8 and 9 are copies of correspondence produced by BSB in response to the Debtor's prior discovery requests, which disclose the sale of additional properties to CCSD in two additional foreclosure proceedings. Copies of these letters are attached as Exhibit H and incorporated herein by reference.

61.     BSB objected to producing responsive documents on the grounds that these requests were "intended to embarrass or harass and [are] not reasonably calculated to lead to the discovery of relevant, admissible evidence in the pending matter.  Further and by way of example, the production of all documents or memorializing transactions, if any, with an unrelated property owner aside from the Plaintiff-Debtor will not lead to the discovery of admissible evidence."  Further, with respect to Request No. 7, BSB asserted that "it is overly broad and unduly burdensome for BSB to produce documentation of all payment plans for all Foreclosure Homeowners that are not involved in this litigation."

62.     As the Court is aware, it is impermissible under Federal Rules 33 and 34 to employ such a litany of generic, boilerplate objections to discovery:

> General objections such as the ones asserted by [Defendant] are meaningless and constitute a waste of time for opposing counsel and the court.  In the face of such objections, it is impossible to know whether information has been withheld and, if so, why.  This is particularly true in cases like this where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request.

*Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D.  Tex. 2014) (quoting *Weems v. Hodnett*, 2011 U.S. Dist. LEXIS 80746 (W.D. La. July 25, 2011)).  The *Heller* court added that "[s]o-called boilerplate or unsupported objections – even when asserted in response to a specific

discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests – are likewise improper ….” *Id.*

63.     Rather, to meet the specificity required by Federal Rule 33 and 34:

> [A]n objecting party must do more than rattle off a litany of trite phrases or make an objection “subject to” other trite phrases located elsewhere in the discovery response.  Instead, the objecting party must explain how each objection applies to each specific discovery request. And as to document requests, “[a]n objection must state whether any responsive materials are being withheld on the basis of that objection.” Fed. R. Civ. P. 34(b)(2)(C). Thus, the objector must state whether responsive materials were withheld and link each specific objection to what was withheld. Otherwise, the objection fails to comply with Rules 33 and 34 and is therefore waived.

*Smash Tech., LLC v. Smash Solutions, LLC*, 335 F.R.D. 438, 447 (D. Utah 2020).  *See also Atkins v. AT&T Mobility Servs., LLC,* 2019 U.S. Dist. LEXIS 227963, *21-21 (S.D. W.Va. April 25, 2019) (similarly finding that improper boilerplate objections to discovery constitute waiver); *Anderson v. Caldwell County Sheriff’s Office*, 2011 U.S. Dist. LEXIS 62263, *8-9 (W.D.N.C. June 10, 2011) (same).

64.     With respect to an assertion of undue burden in particular, the objecting party must detail the anticipated time and expense involved with responding to the request.  *AMTRAK v. Guy M. Turner, Inc.*, 2016 U.S. Dist. LEXIS 61073, *9 (E.D.N.C. May 9, 2016).  Failure to do so constitutes a waiver of any objection on the grounds improperly asserted in boilerplate fashion.  *Brown v. Blue Cross & Blue Shield of Ala.*, 2014 U.S. Dist. LEXIS 96105, *14 (W.D.N.C. July 15, 2014).

65.     BSB failed to meet the rigorous requirements of the Federal Rules with its listing of stock objections to Request for Production Nos. 7-9.  Therefore, its objections on the grounds of harassment, undue burden, overbreadth, and relevance were waived.

66.     Moreover, as previously explained to BSB in the Third Deficiency Letter, attached as Exhibit F, a central issue in this adversary proceeding is whether the foreclosure sale conducted by BSB was tainted by irregularity.   In their pleadings, the parties tell markedly different stories regarding the Debtor's attempt to pay off the alleged assessments against his property.  BSB maintains the Debtor entered into a pre-sale installment agreement that it, rather than the HOA, negotiated, and that the Debtor then breached.  The Debtor denies knowledge of the existence of any such agreement.

67.     BSB's practices with respect to such agreements, and whether its treatment of the Debtor was consistent with similar settlements in other foreclosures, bears directly on the regularity or irregularity of the underlying proceeding.   Additionally, BSB can hardly claim harassment or undue burden arising from the production of payment plan documentation arising in two, specifically identified foreclosure cases.

68.     The Debtor therefore requests that the Court overrule BSB's objections and order it to produce all documents responsive to Request for Production Nos. 7-9 in his second discovery requests.

### *Exclusion of Materials Not Timely Produced*

69.     Finally, as noted above, BSB provided an affidavit in an attempt to show that all documents – other than those withheld for specific reasons – have been produced in response to the Debtor's discovery requests.  *See* Exhibit E, *Aff. of Steven E. Black*.   However, the affidavit cryptically states no other documents have been "knowingly" withheld, and that if still other responsive documents come to BSB's attention in the future, they will be "promptly produced or the privilege log will be updated …"

70.     BSB has already supplemented its discovery responses and document productions in this case on at least four occasions.  After multiple hearings before the Court, discovery has now closed except for pending motions to compel and a narrow class of depositions that may be conducted by the Debtor.  *See Order on Continued Scheduling Conference and Related Matters* [Doc. 64].

71.     The Debtor will be prejudiced in the prosecution of his case if BSB is permitted to untimely modify or supplement its discovery responses yet again in the future, as suggested in its affidavit.  "Courts regularly conclude that untimely productions after the close of discovery are not harmless." *Prakhin v. United States*, 164 Fed. Cl. 440, 453 (2023) (citing authorities).

72.     While parties have an ongoing duty to supplement incomplete or incorrect discovery under Federal Rule 26, such supplementation must nevertheless be made "in a timely manner." Fed. R. Civ. P. 26(e).

73.     The facts pertinent to this litigation occurred during March of 2022 to April of 2023.  The discovery requests at issue seek information from that period, and back in time to as early as 2020 in certain instances.  Clearly, BSB is already in possession of any materials created during these timeframes that are responsive to the Debtor's requests.  Parties have an affirmative duty during the discovery period to diligently obtain, prepare, and provide responsive information. *See Fidlar Techs. v. LPS Real Estate Data Solutions, Inc.*, 2015 U.S. Dist. LEXIS 671, *9, 2015 WL 109835 (C.D. Ill. Jan. 6, 2015) (excluding supplemental evidence of damages in possession of party but not produced until after close of discovery).  There is no reasonable justification for BSB's inability to provide full and complete responses in a timely manner.[3]

---

[3] Indeed, BSB contends in its affidavit that it has diligently undertaken "exhaustive" searches and review of its files in response to the Debtor's discovery requests already.

74.     The appropriate remedy for a party's failure to timely produce information in its possession during discovery is exclusion of the unproduced materials as evidence under Federal Rule 37(c)(1). *See In re Diversified Mercury Communications, LLC*, 2022 Bankr. LEXIS 3075, *9-10 (Bankr. D. Del. Oct. 31, 2022).[4]  In excluding responsive evidence produced only weeks before trial, the *Diversified Mercury* court noted that the delay in production severely prejudiced the opposing party by subjecting him to unfair surprise and effectively eliminating his ability to conduct discovery on the newly provided information. *Id.* at 10-11.

75.     The Debtor will be exposed to identical prejudice if BSB and the other defendants are not required to produce all responsive information by the hearing in this matter.  BSB and the other defendants have enjoyed ample time to provide any and all discovery responses, and the Debtor should not be presented with still more evidence after the close of discovery, and perhaps after completion of his depositions, but shortly before any dispositive hearings.

76.     The Debtor therefore requests that BSB be prohibited from introducing responsive materials as evidence in this case to the extent not produced to the Debtor on or before April 3, 2024 (subject to the Court's ruling on this motion to compel discovery).

## CERTIFICATION

77.     The Debtor certifies that he has in good faith conferred or attempted to confer with BSB in an effort to obtain the discovery sought herein without court action.

---

[4] Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required by Rul 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

## CONCLUSION

WHEREFORE, the Debtor prays the Court for entry of an Order:

A.    Compelling BSB to produce documents it incorrectly contends are subject to immunity from discovery by the attorney-client privilege, the work product immunity, and/or the common interest privilege;

B.    Compelling BSB to produce its communications with Foreclosure Homeowners regarding payment plans;

C.    Overruling BSB's objections with respect to the foregoing materials;

D.    Prohibiting BSB from introducing information not timely produced as evidence;

E.    Awarding the Debtor his fees and costs associated with the filing and prosecution of this motion; and

F.    Such other relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
March 26, 2024

**MOON WRIGHT & HOUSTON, PLLC**

_/s/ Richard S. Wright_
Richard S. Wright (Bar No. 24622)
212 N. McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone: (704) 944-6560
Facsimile: (704) 944-0380
_Counsel for Debtor-Plaintiff_

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Motion to Compel Discovery from Defendant Black, Slaughter & Black, P.A.* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on the date shown below.

Dated: Charlotte, North Carolina
         March 26, 2024

**MOON WRIGHT & HOUSTON, PLLC**

    */s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
212 N. McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for Debtor-Plaintiff*