# EXHIBIT C



**MOON WRIGHT & HOUSTON**



212 North McDowell Street
Suite 200
Charlotte, NC 28204
main 704.944.6560
fax 704.944.0380
www.mwhattorneys.com

February 9, 2024

Emily J. Meister                                   *Via U.S. Mail and Email*
Black, Slaughter & Black, P.A.
3623 North Elm Street, Suite 200
P.O. Box 41027
Greensboro, NC 27404-1027
emeister@lawfirmcarolinas.com

> **Re:**   ***Watson et al. v. Forest Pond Homeowners Association, Inc. et al.***
> **(WDNC Adv. Proc. No. 23-03028)**
> **Response to Discovery Deficiency Letter**

Dear Ms. Meister:

I write as counsel to debtor-plaintiff Levander L. Watson, Jr. (the "Debtor") in the above-referenced adversary proceeding. Thank you for your letter of February 7, 2024, responding to mine of January 31, 2024 regarding the responses of your client, Black, Slaughter & Black, P.A. ("BSB") to the Debtor's first discovery requests. Your letter was accompanied by a second supplemental discovery response (which is in addition to the previous supplemental responses you served on January 25, 2024), and a privilege log.

We are pleased that the parties appear to be making at least some progress in resolving their discovery disputes. However, as detailed below, there are a number of issues that remain outstanding. I will respond to your comments regarding each interrogatory or document request referenced in my original letter, in their numerical order as they appeared in your February 7th communication.

**Interrogatory No. 5:** it is helpful that you have listed particular names of persons with knowledge in BSB's most recent supplementation. I note, however, that no addresses were provided for any current or former employees of BSB. Are you in a position to accept subpoenas compelling these people to appear at hearings or depositions (if necessary)?

**Interrogatory No. 6:** this question seeks the identities of all board members of the Forest Pond Homeowners Association, Inc. (the "HOA") with whom BSB has communicated regarding the Debtor or the disputed property. BSB's initial response raised attorney-client privilege and work product objections, then referenced someone named Roberta Hemphill. In your most

recent letter, you state that BSB will not withdraw its privilege objection (no reference is made to the work product objection), but that your office does not know of, and has no record of, communications with any other board members. This example illustrates a fundamental problem with BSB's discovery responses to date. First, the identities of human beings are not privileged communications, nor are they attorney work product prepared in anticipation of litigation. Second, if BSB communicated only with Ms. Hemphill and has no memory or record of communicating with any other board members, then its written responses should simply say that, under oath, as required by Rule 33. It is as though BSB has interposed an inapplicable objection to provide cover in the event its response later proves to be incorrect. That is not the proper purpose of an objection to discovery. Proceeding in this fashion renders BSB's responses inherently unreliable and the answer should be corrected accordingly.

**Interrogatory No. 7:** this question asks BSB to identify anyone engaged by the HOA to provide property management services. In its initial responses BSB interposes a boilerplate objection on the grounds of oppression, undue burden, harassment, etc., and indicates the Debtor should seek this information from the HOA itself.[1] The response then refers to various bates labeled documents contained in BSB's initial production. In your February 7th letter, the message seems to be that BSB's document production reflects two such management companies, and that BSB knows of no other parties whose identities would be responsive to the interrogatory. More particularly, your letter says:

> While you may not like that the objection uses words that are common parlance within our profession, the objection is specific to the Interrogatory, and we have no other information to produce under this Interrogatory. We, therefore, will not be withdrawing the objection to this Interrogatory and instead reply upon and reiterate the information previously provided.

BSB's response to this interrogatory, as augmented by the comments in your letter, raises a similar problem as is referenced in the discussion of Interrogatory No. 6, above. Boilerplate objections followed by a qualified response "are meaningless and constitute a waste of time for opposing counsel and the court. In the face of such objections, it is impossible to know whether information has been withheld and, if so, why." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).

If the point of BSB's response is that it knows of only two management companies employed by the HOA, the response should simply say that and identify them, under oath, without qualification. The propounding party obviously needs the assurance that all responsive information in the possession of the respondent has been provided.

**Interrogatory No. 8:** this question seeks a breakdown of fees and costs BSB contends the Debtor owed to the HOA in connection with the disputed foreclosure. In its response, BSB again raises a boilerplate objection and refers the Debtor to various bates labeled documents. In

---

[1] In its objections, BSB frequently asserts the request at issue "is not reasonably calculated to lead to the discovery of admissible evidence." This consideration is irrelevant under Federal Rule of Civil Procedure 26. To avoid repetitive arguments, the Debtor does not address this objection each time it arises in BSB's discovery responses, and instead assumes it is subsumed in BSB's objections on the grounds of burden, overbreadth, etc.

your letter, you state "[w]e can attest that we are not withholding information responsive to [this Interrogatory], and we have no other information to produce." That seems reasonable enough as far as it goes, but the imposition of a generic objection before offering a qualified answer referring to documents still begs the question of whether other information is being withheld. A proper interrogatory answer in compliance with Rule 33 must include the attestation made in your followup letter, but under oath by your client.

**Interrogatory No. 9:** this interrogatory requests detail regarding transfers made by the Debtor (or on his behalf) to BSB from January 1, 2020 to the present. Again, BSB raises a boilerplate objection and refers to various bates labeled documents. Your February 7th letter includes this question in your discussion of the previous interrogatory as well, offering your attestation that BSB has no responsive information beyond the identified documents. As stated with respect to Interrogatory No. 8, above, the formal answer should be revised to affirmatively state under oath that BSB has no other responsive information to eliminate the doubt created by its preliminary objection.

**Request for Production No. 6:** this request for production seeks communications between BSB and the HOA regarding the disputed property from the time of BSB's appointment as foreclosure trustee to the present. BSB objects to the request on the grounds of attorney-client privilege and work product immunity. In your recent letter, you note that the homeowners association will not waive attorney-client privilege, and thus, no documents will be produced. The second supplemental response included with your letter makes no substantive change to the response to this request other than to reference the newly added privilege log. That log, in turn, indicates that responsive documents have been withheld. As mentioned in my prior letter to you, however, there is no attorney-client privilege with respect to communications with BSB in its role as a neutral foreclosure trustee. It appears that the parties are at an impasse on this point and that a motion to compel will be necessary.

**Request for Production No. 7:** this request seeks communications between BSB and the association regarding the Debtor from the time of BSB's appointment as trustee to the present. BSB's objections and the comments in your letter are identical to those with respect to Request for Production No. 6 above. The second supplemental response also makes no revision to BSB's original answer other than a reference to the newly added privilege log. Accordingly, the Debtor will address the parties' disagreement on these issues in a motion to compel.

**Request for Production No. 8:** This request seeks communications between BSB and defendant CCSD Properties, LLC ("CCSD") or its agents regarding the disputed property from January 1, 2020 to the present. BSB objects on the grounds of attorney-client privilege and work product immunity, but then directs the reader to certain bates labeled documents it has produced. As mentioned above, this approach leaves the reader in the dark as to whether responsive materials have been withheld. In your February 7th letter, you attempt to address this problem by stating internal communications between BSB employees (regarding where to direct a communication from CCSD) have been withheld, as well as communications with counsel for other parties in this case. Again, the second supplemental response included with the letter does not change the substance of BSB's answer, but only references the new privilege log. It is difficult to see how inter-office communications would be covered by attorney-client privilege or

work product immunity; and perhaps more importantly, unless BSB served as CCSD's counsel, such communications among BSB's employees would not be responsive to the request (which seeks communications between BSB and *other* parties). Can you explain why the inter-office communications are referenced with respect to this request in the first place, so we can better understand BSB's objection? Further, it is insufficient to merely claim privilege or work product with respect to communications and documents shared with other counsel in the adversary proceeding. Nothing else appearing, having communications or sharing otherwise protected materials with a non-client third party waives any otherwise applicable immunity from disclosure. Your letter states, without citation, that "we believe our objection to be well founded under existing case law." What case law are you referencing? What facts support the assertion of this extended privilege? Given the stridency of your response, I assume the parties are at an impasse on these issues as well and a motion to compel will be needed to reach a resolution.

**Request for Production No. 9:** This request seeks communications between BSB and CCSD or its agents regarding the Debtor from January 1, 2020 to the present. The discussion of Request for Production No. 8, above, is the same here. The relevant section of your recent letter addresses Requests 8 and 9 together, and the only change in the second supplement response is a reference to the new privilege log. Accordingly, I assume a motion to compel will be required to resolve our dispute as to this request for production too.

**Request for Production Nos. 10-12:** These three requests seek communications between BSB and the Mecklenburg County Clerk of Court concerning (a) foreclosure case 22 SP 0528, (b) the disputed property from January 1, 2020 to the present, and (c) the Debtor from January 1, 2020 to the present. In each instance, BSB asserts boilerplate objections on the grounds of oppressiveness, burden, expense, etc., as well as attorney-client privilege and work product. Each answer then references a common set of bates labeled documents. We do not see how communications between your client, a law firm, and the Clerk of Court implicate attorney-client privilege or work product. Neither doctrine seems applicable. Similarly, it is difficult to see how or why BSB would have had so many communications with the Clerk of Court regarding a single foreclosure case, a particular piece of property, or the Debtor, that their production is particularly burdensome or oppressive. As with so many of BSB's answers, the response also presents the very problem highlighted in the *Heller* case cited above: the reader cannot determine whether documents have been withheld on the basis of these objections. As such, the answer is evasive. The second supplemental discovery response accompanying your February 7th letter makes no mention of these requests. However, you indicate in the letter itself that, despite the many objections, all responsive documents in BSB's possession have, in fact, been produced and nothing has been withheld. This statement, in turn, leads us to ask why any objections were interposed in the first place. Again, proper answers to the questions would make clear that BSB has produced all responsive documents and nothing has been withheld.

**Request for Production No. 13:** this request asks for all communications between BSB and any other person or entity regarding the disputed property from January 1, 2020 to the present. BSB asserts a boilerplate objection on the grounds of oppression, burden, etc., and again asserts attorney-client privilege and work product immunity. It then references documents "previously identified" and one bates labeled document. In your February 7th letter, you state that irrespective of these objections, BSB has produced all documents it responsive to the request

and nothing has been withheld. Paradoxically, the answer to Request No. 13 in the second supplemental response then incorporates the new privilege log. The answer to the request, both as originally stated and as subsequently modified, seems at odds with the statement in your letter that all responsive documents have been produced. A proper answer to the question would make clear that BSB has produced all responsive documents and nothing has been withheld (if that is in fact the case).

**Request for Production No. 14:** this request seeks all communications between BSB and any other person or entity regarding the Debtor from January 1, 2020 through the present. BSB asserts a boilerplate objection based on burden, oppression, etc., and again raises attorney-client privilege and work product immunity. In my letter to you of January 31st, we took issue with BSB's response for the familiar reasons identified in *Heller, supra,* and because its claims of privilege lacked any supporting documentation. Those concerns remain unaddressed, since neither your February 7th letter nor BSB's second supplemental response address Request for Production No. 14 at all. Perhaps this was mere oversight on your part. It is our hope that your statement regarding Request No. 13 is equally applicable here, and that BSB has produced all responsive materials and not withheld anything. But we'll obviously need clarification from you and your client to know whether that is the case.

**Request for Production Nos. 15-18:** these requests seek accountings of (a) funds paid to BSB by or on behalf of the Debtor, (b) funds BSB contends was owed by the Debtor to the HOA on May 6, 2022, (c) all legal fees and costs included in the amounts BSB contends were owed by the Debtor to the HOA, and all invoices or payments requests from BSB to the HOA for services related to the Debtor or the disputed property. BSB again raises stock, boilerplate objections to these requests, and asserts attorney-client privilege and work product immunity as bars to production. The second supplemental response does not address these particular requests. However, your February 7th letter states BSB has produced "records or spreadsheets maintained in the underlying Foreclosure Action of the moneys owed by Plaintiff, the legal fees and costs charged or included, those funds paid by Plaintiff and the disbursement of all funds paid by Plaintiff." It does not appear from the privilege log accompanying your letter that documents were withheld on the basis of any privilege or immunity. If so, it would seem BSB's response should simply make clear that all responsive documents in its possession, custody, or control have been produced. But I note that your letter adds "the creation or production of documentation not maintained in the underlying Foreclosure Action and beyond that already provided to you would be expensive and unlikely to lead to the discovery of admissible evidence. As such, we will not withdraw our objections." This suggests that there are other responsive materials available, but that producing them would be expensive. What are these materials, and why would they be particularly expense to produce? BSB's objections do not provide the requisite detail. As mentioned in my prior letter to you, an "objecting party must explain how each objection applies to each specific discovery request." *Smash Tech., LLC v. Smash Solutions, LLC,* 335 F.R.D. 438, 447 (D. Utah 2020). We ask that BSB either clarify that it has produced all responsive materials, or give a more detailed explanation of why it should not be obligated to produce these other documents.

**Request for Production No. 20:** this request asks for all invoices or requests for payment from BSB to CCSD from January 1, 2020 to the present. In is initial response, BSB

asserted that the there were no responsive documents. In its first supplemental response, BSB took the Debtor to task for mistyping "CCDS" rather than CCSD, raised a boilerplate objection based on vagueness and overbreadth, then produced two examples of responsive documents. This request was referenced in my letter of January 31st because, again, the boilerplate objection followed by a qualified response does not make it clear whether all responsive documents have been produced or not. Your February 7th letter similarly does not state whether any documents have been withheld, and if so, why. A proper response under Rule 34 should address these points.

**Other Concerns:** In my letter of January 31st, I pointed out to you that "documents" in the initial discovery requests would include any audio recordings of communications and not just written correspondence. In your letter of February 7th, you state that your office has no recordings of my client. Consistent with my suggestion below, we request that your client make this affirmation under oath consistent with Rule 33. I also noted in my earlier letter that BSB failed to verify its discovery responses. This acknowledges that a verification of BSB's initial discovery responses, first supplemental responses, and second supplemental responses accompanied your letter.

### Means to Resolve Remaining Issues:

#### Questions Where Supplemental Information Is Needed

Consistent with the discussion above, I ask that you let me know if you are the point of service for all the current and former BSB employees listed in the answer to Interrogatory No. 5 as stated in the second supplemental response, or amend that answer again to provide contact information for those people we may need to reach otherwise.

Request for Production No. 14 was not addressed in your February 7th letter or in the second supplemental responses. Accordingly, please let us know whether all responsive materials have been produced (in which case, see the affidavit discussion in the following section), or amend the current answer clarifying whether BSB is withholding additional materials and why.

It is similarly unclear if BSB maintains it has produced all materials responsive to Requests for Production Nos. 15-18 and 20. If not, please amend the current answers to clarify that materials are being withheld and describe why with the requisite detail. If, on the other hand, BSB maintains all responsive materials have been produced, then see the following section regarding a proposed affidavit.

#### Affidavit Verifying That All Responsive Materials Have Been Produced

With respect to any requests for production covered in this letter, and in response to which BSB asserts it has already produced all responsive materials to the Debtor, please have your client execute a verified affidavit stating so and provide that to me. This would prevent the need for BSB to amend all of its prior discovery responses yet another time to address the Debtor's remaining concerns. It is my hope this affidavit could reference Interrogatory Nos. 6,

8, and 9, as well as Request for Production Nos. 10-12 and 13. Likewise, it would be acceptable to deal with Interrogatory No. 7 by clarifying in the affidavit that BSB knows of only two management companies employed by the HOA and identifying them. Depending on the answers to the questions posed in the preceding section, it may also be possible to state in the affidavit that all materials responsive to Requests for Production Nos. 14-18 and 20 have been produced (but you and your client will need to make that determination, of course). It would also tie off another loose end if the affidavit stated BSB possesses no audio recordings of the Debtor as referenced in your February 7th correspondence. I would be happy to review a draft affidavit before it is executed.

If we have misunderstood the import of your statements regarding the production of all responsive information with respect to any of the foregoing requests, then we ask that BSB amend its responses to those particular items yet again to clarify that documents are being withheld and why.

### *Motion to Compel*

As stated above, it appears to me that a motion to compel discovery will be needed to resolve the parties' disputes over Request for Production Nos. 6-9. You should let me know if you believe otherwise or can provide additional authorities regarding BSB's claims of privilege and work product immunity in response to those requests. Further, if BSB is unwilling to address the Debtor's remaining concerns as set forth herein, the forthcoming motion to compel can similarly address any other remaining disputes.

### *Proposed Deposition of the Debtor*

I received your email of Thursday, February 1st at 3:51 p.m. requesting dates over the next two weeks for a deposition of the Debtor. I fell ill that evening and was out of the office on Friday, February 2nd. Nevertheless, and without knowledge of my illness, you emailed a notice at 4:21 p.m. on February 2nd setting the Debtor's deposition for February 13th at 10:00 AM. I wish you had afforded me more than 24 hours to respond to your first email, as I had to inform you on Monday, February 5th that I will be unavailable on February 13th due to prior commitments. Moreover, I told you then that the Debtor does not believe he should be required to sit for a deposition in any event until he has received full and complete responses to the discovery requests previously served upon the defendants. Not only are there lingering issues over the responses to our initial requests (as set forth in this letter), but we also served a second set of six interrogatories and nine requests for production upon BSB, in particular, on January 27th that have yet to be answered.

Your response, sent at 6:18 p.m. on February 5th, stated: "as noted in my email, I am happy to work to find a mutually agreeable date for all if such deposition is even needed given the communications from earlier today regarding the settlement reached." I took your message to mean that the issue was resolved in the short term, and that the requested deposition was tabled until the hearing set for March 8th.

However, in your email communication to me at 6:25 on the evening of February 7th (attaching your response letter, the second supplemental discovery requests, BSB's verification page, and privilege log) you reversed course and again referenced a desire to depose the Debtor. Mr. Barnes reiterated that sentiment in an email to me today at 4:20 p.m., complaining that "[w]e've asked multiple times for an alternative date; you've ignored our requests while at the same time telling us your client won't attend the noticed deposition for the 13th. Unless we can agree on a new date, given prior communications, you are leaving us with no choice but to seek relief from the court."

Mr. Barnes' message is inaccurate and strikes me as a tactical attempt to create a self-serving narrative. The fact of the matter is that we have already clearly stated our position regarding the proposed deposition (which you have previously suggested is unnecessary due to the pending settlement motion with the trustee). As stated in my message to you of February 5th, once we have complete answers to all of our written discovery we are happy to work with you to schedule mutually agreeable deposition dates. In response, you have paradoxically filed a second motion to stay discovery in the case, while simultaneously demanding to proceed with a deposition of the Debtor. Those positions are plainly at odds with one another and difficult to understand.

What we will not cooperate in is a continued effort by BSB (or any of the other defendants) to slow play responding to the Debtor's discovery requests, while forcing their own discovery down the Debtor's throat at the 11th hour or attempting to proceed with a hearing on the recently filed settlement motion before all pertinent facts are disclosed. The prejudice BSB and its confederates would impose upon the Debtor in those circumstances is incredible.

While a special setting is scheduled in this case for March 8th, I note that Judge Beyer also has a regular Chapter 13 hearing day on February 20, 2024. There are already hearings in this case scheduled for that date. It seems to me that the best way to address the handling of discovery going forward is to request a scheduling conference with the Court on February 20th as well. The purpose of the hearing would not be to litigate substantive issues such as motions to compel or for protective orders, but to arrive at an orderly schedule for the completion of whatever discovery the parties deem necessary at this stage of the case. I have no objection to preparing a short motion to that effect and filing it on Monday. Accordingly, as soon as possible on Monday, please let me know your position on holding a discovery scheduling conference with the Court on February 20th as I've proposed here.

-------------------------------------------

As for the other issues addressed in this letter, it is certainly fine if you wish to respond in writing. I am also available during the morning on Monday, or in the afternoon on Wednesday, February 14th before 3:00 to speak by phone. In any event, I would like to get whatever motion to compel is necessary as to BSB on file by February 16th. Rather than providing a response deadline (which you seemed to find offensive based on the tenor of your February 7th message), I would appreciate it if you could provide some sort of answer before next Friday, taking into account whatever time we will reasonably need to study the response(s) received.

Thank you in advance for your attention to this important matter.

Sincerely yours,

Richard S. Wright

Cc:  Christopher Barnes, Esq. (via email)