IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| **LEVANDER L. WATSON, JR.,** | ) | |
| | ) | Case No. 23-30536 |
| Debtor. | ) | |
| | ) | |
| **LEVANDER L. WATSON, JR. and** | ) | |
| **JENNY P. HOLMAN, Chapter 13 Trustee for** | ) | |
| **the Bankruptcy Estate of Levander L. Watson,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 23-03028 |
| | ) | |
| **FOREST POND HOMEOWNERS** | ) | |
| **ASSOCIATION, INC., BLACK SLAUGHTER** | ) | |
| **& BLACK, P.A.**; **and CCSD** | ) | |
| **PROPERTIES, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO COMPEL DISCOVERY FROM DEFENDANT
<u>CCSD PROPERTIES, LLC</u>**

Debtor-Plaintiff Levander L. Watson, Jr. (the "Debtor") hereby moves the court pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37 (made applicable to this adversary proceeding by Bankruptcy Rules 7026, 7033, 7034, and 7037) for the entry of an order compelling defendant CCSD Properties, LLC ("CCSD") to fully respond to his written discovery requests as set forth below, and awarding the Debtor the attorneys' fees and costs he incurred in bringing this motion. In support of his motion, the Debtor shows the Court as follows:

MWH: 10802.001; 00029661.1

## BACKGROUND

1.     The Debtor purchased a house and lot located at 6308 Forest Pond Drive, Charlotte, North Carolina (the "Property") in December of 2011, where he has continuously resided since that time.

2.     The Property is encumbered by a deed of trust in favor of Wells Fargo Bank, N.A., securing a debt of approximately $92,000.00.

3.     The Property has a tax value of $328,100.00.  Accordingly, the Debtor's equity interest in the Property is at least $236,000.00.

4.     Defendant Forest Pond Homeowners Association (the "HOA") commenced a foreclosure action against the Property in Mecklenburg County on March 2, 2022, to execute on a lien for assessments of $970.00 allegedly owed by the Debtor.

5.     The HOA retained Defendant Black, Slaughter & Black, P.A. ("BSB") to serve as trustee to conduct the foreclosure.

6.     The Debtor attempted to pay the full amount claimed to BSB on two occasions in May and June of 2022.  In both instances, the Debtor had sufficient funds in his checking account to pay the asserted debt in full, and communicated to BSB that he wished to do so.  On both occasions BSB accepted funds from the Debtor's account via debit card.  The Debtor understood these debits, in the total amount of $2,066.48, satisfied the entire indebtedness asserted by the HOA.

7.     However, a foreclosure hearing took place eight months' later on February 27, 2023, at which time the clerk authorized a sale of the Property.  BSB then auctioned the Property on or about April 20, 2023.  Upon information and belief, CCSD submitted the highest bid of $2,359.23 on April 21, 2023.  BSB subsequently deeded the Property to CCSD on June 1, 2023.

8. The Debtor did not learn about the purported sale of his Property until after the statutory 10-day upset period.

9. The Debtor filed for relief under Chapter 13 on August 2, 2023 (the "Petition Date"). He then worked with the Chapter 13 trustee to file the instant adversary proceeding on August 8, 2023, challenging the foreclosure sale as a fraudulent transfer.

**THE DEBTOR'S DISCOVERY REQUESTS**

10. The Debtor timely served his *First Set of Interrogatories and Request for Production of Documents* upon CCSD on November 10, 2023, seeking information regarding persons with knowledge of the facts alleged in the pleadings, expert witnesses, information regarding the parties' interactions prior to the alleged sale, and CCSD's history of purchasing properties in similar foreclosures.

11. CCSD served its *Objections and Responses of CCSD Properties LLC to Plaintiff's First Set of Interrogatories and Request for Production of Documents* (the "Initial Responses") on January 27, 2024. The Initial Responses were accompanied by a document production purportedly responsive to the Debtor's requests.

12. A true and accurate copy of the Initial Responses are attached as <u>Exhibit A</u> and incorporated herein by reference.

13. Upon review, the Debtor noted certain deficiencies in the Initial Responses. These deficiencies were described in a letter sent by the undersigned to CCSD's counsel on February 1, 2024 (the "First Deficiency Letter").

14. The deficiencies noted by the Debtor included (a) the repeated use of stock, boilerplate objections, (b) a failure to disclose whether responsive materials were withheld on the basis of stated objections as required by Federal Rule of Civil Procedure 34(b)(2)(C), (c)

unsubstantiated claims of attorney-client privilege and work product immunity, and (d) lack of verification pursuant to Federal Rule of Civil Procedure 33(b)(3).

15.     The Debtor requested that CCSD review its responses and respond to the Debtor's concerns in a week's time.  A copy of the First Deficiency Letter is attached as Exhibit B and incorporated herein by reference.

16.     On February 8, 2024, CCSD served its *Supplemental Objections and Responses of CCSD Properties LLC to Plaintiff's Request for Production of Documents* (the "Supplemental Responses").  The Supplemental Responses did not address the Debtor's concerns over CCSD's prior interrogatory responses, although they did include a verification form.  The Supplemental Responses were also accompanied by a privilege log and additional documents purportedly responsive to the Debtor's document requests.  A true and accurate copy of the Supplemental Responses is attached as Exhibit C and incorporated herein by reference.

17.     Unfortunately, the Supplemental Responses did not address many of the fundamental points raised in the Debtor's First Deficiency Letter.  For example, the majority of the supplemental responses to the identified requests for production merely added a reference to the newly provided privilege log, but were otherwise unchanged.  Other unresolved issues included, but were not limited to, the use of boilerplate objections, failure to disclose whether otherwise responsive documents were withheld on the basis of asserted objections, and, most notably, improper claims of attorney-client privilege.

18.     The Debtor wrote to CCSD's counsel again on February 10, 2024 in an effort to resolve its ongoing concerns over the discovery responses (the "Second Deficiency Letter").  A true and accurate copy of the Second Deficiency Letter is attached as Exhibit D and incorporated herein by reference.

19.     In the Second Deficiency Letter, the Debtor outlined the specific problems posed by CCSD's individual responses to each numbered request for production in painstaking detail. The Debtor then proposed various means to remedy the highlighted shortcomings, including the execution of an affidavit clarifying that all responsive, non-privileged materials had, in fact, been provided; and the filing of a motion to compel to address CCSD's ongoing claims of attorney-client privilege.

20.     CCSD responded to the Second Deficiency Letter via email on March 7, 2024 (the "Second Deficiency Response").  A true and accurate copy of the Second Deficiency Response is attached as Exhibit E and incorporated herein by reference.

21.     CCSD provided two emails between its counsel and the Chapter 13 trustee in the Second Deficiency Response, a description of communications among the co-defendants to this action that are still withheld, and an affidavit from CCSD regarding the alleged completeness of its discovery responses (presumably in response to the proposal made by the Debtor in the Second Deficiency Letter). Most notably, CCSD still contended that certain communications sought by the Debtor were undiscoverable pursuant to the "common interest doctrine."

22.     CCSD's tendered affidavit (included in Exhibit E), while somewhat helpful in narrowing the issues between the parties, is not the definitive document proposed by the Debtor in his earlier correspondence.  The affidavit sets forth categories of documents withheld on the basis of certain objections, but is internally inconsistent or duplicative.  For example, the affidavit states that CCSD has withheld (a) the documents identified in its February 8, 2024 privilege log, *and* (b) communications between counsel for the co-defendants under a claim of common interest.  With two exceptions (addressed below), however, the referenced privilege log only lists communications between the defendants' attorneys.

23. Further, the affidavit states that documents "created during the pendency of this action that are protected by the attorney-client privilege or the work product doctrine" have been withheld. But the only documents listed in CCSD's privilege log other than communications between defense counsel are communications dated December 18, 2023 and January 22, 2024 between CCSD's counsel, CCSD, and (according to documents produced by CCSD) individuals who are employed by companies *other* than CCSD. Accordingly, any privilege that might otherwise attach to those communications was waived when third parties were included.

24. The affidavit adds there are no other documents "knowingly withheld" by CCSD, but that if other responsive documents come to CCSD's attention they will be "promptly produced or the privilege log will be updated …"

25. Thus, the affidavit creates its own share of confusion and does not provide the guarantee sought by the Debtor: namely, that *all* responsive materials (other than those delineated as having been withheld subject to specific, legitimate objections), have in fact been fully produced by CCSD.

### RELIEF REQUESTED

26. The Debtor requests entry of an order: (a) compelling CCSD to fully respond to Request for Production No. 7, (b) compelling CCSD to produce documents it incorrectly contends are subject to immunity from discovery by the attorney-client privilege, the work product immunity, and/or the common interest privilege; (c) overruling CCSD's objections with respect to the foregoing materials; (d) excluding information not timely produced from admission as evidence; and (e) awarding the Debtor his fees and costs associated with the filing and prosecution of this motion.

## BASES FOR REQUESTED RELIEF

### *Request for Production No. 7*

27.     The Debtor propounded the following request for production in his discovery requests: "All documents containing or memorializing communications between [CCSD] and the HOA and/or any of its attorneys, members, employees, or agents referencing a potential and/or actual foreclosure or purchase of any property."  (RPD No. 7).

28.     In its Supplemental Responses, CCSD stated:

> Defendant CCSD objects to this request to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, is unreasonable and oppressive, and will subject it to undue burden, expense, and harassment.  CCSD further objects to this request to the extent that it calls for the production of communications or information protected by attorney client privilege or the work product doctrine.  Without waiving such objection see the documents produced herewith including but not limited to, CCSD FRP 1- CCSD RFP 25.

29.     As the Court is aware, it is impermissible under Federal Rules 33 and 34 to employ such a litany of generic, boilerplate objections to discovery:

> General objections such as the ones asserted by [Defendant] are meaningless and constitute a waste of time for opposing counsel and the court.  In the face of such objections, it is impossible to know whether information has been withheld and, if so, why.  This is particularly true in cases like this where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request.

*Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D.  Tex. 2014) (quoting *Weems v. Hodnett*, 2011 U.S. Dist. LEXIS 80746 (W.D. La. July 25, 2011)).  The *Heller* court added that "[s]o-called boilerplate or unsupported objections – even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests – are likewise improper …." *Id.*

30.     Accordingly, to meet the specificity required by Federal Rule 33 and 34:

[A]n objecting party must do more than rattle off a litany of trite phrases or make an objection "subject to" other trite phrases located elsewhere in the discovery response.  Instead, the objecting party must explain how each objection applies to each specific discovery request. And as to document requests, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Thus, the objector must state whether responsive materials were withheld and link each specific objection to what was withheld. Otherwise, the objection fails to comply with Rules 33 and 34 and is therefore waived.

*Smash Tech., LLC v. Smash Solutions, LLC*, 335 F.R.D. 438, 447 (D. Utah 2020).  *See also Atkins v. AT&T Mobility Servs., LLC,* 2019 U.S. Dist. LEXIS 227963, *21-21 (S.D. W.Va. April 25, 2019) (similarly finding that improper boilerplate objections to discovery constitute waiver); *Anderson v. Caldwell County Sheriff's Office*, 2011 U.S. Dist. LEXIS 62263, *8-9 (W.D.N.C. June 10, 2011) (same).

31.	With respect to an assertion of undue burden, in particular, the objecting party must detail the anticipated time and expense involved with responding to the request.  *AMTRAK v. Guy M. Turner, Inc.*, 2016 U.S. Dist. LEXIS 61073, *9 (E.D.N.C. May 9, 2016).  Failure to do so constitutes a waiver of any objection on the grounds improperly asserted in boilerplate fashion.  *Brown v. Blue Cross & Blue Shield of Ala.*, 2014 U.S. Dist. LEXIS 96105, *14 (W.D.N.C. July 15, 2014).

32.	CCSD's objections fail to meet the rigorous requirements of the Federal Rules with its listing of stock objections to Request No. 7.  Therefore, its objections on the grounds of harassment, undue burden, and relevance were waived.

33.	CCSD also fails to state whether documents have been withheld from production in response to RPD No. 7 in compliance with Federal Rule of Civil Procedure 34(b)(2)(C) – although its affidavit expressly states that they have been so withheld despite its waiver as described above.

34. Additionally, while CCSD apparently contends documents responsive to Request No. 7 are subject to the attorney-client privilege and/or the work product immunity, no such materials are described in its privilege log. It is also difficult to conceive of how the communications sought in Request No. 7, between CCSD and the HOA regarding property foreclosures or sales would be between a lawyer and client for the purpose of obtaining legal advice, or would constitute materials prepared in anticipation of litigation.

35. Accordingly, CCSD's objections are without merit, and it should be compelled to provide a full and complete response to Request No. 7.

### *The Defendants Do Not Share a Common Interest That Shields Their Communications*

36. CCSD also contends in its affidavit that it may withhold documents responsive to unidentified requests under the "common interest" privilege. This assertion is particularly vexing in that CCSD did not assert the common interest privilege at any point in either its Initial Responses or its Supplemental Responses to the Debtor's discovery requests. The Debtor must nevertheless address this issue, based upon the content of CCSD's affidavit and because its privilege log appears to include a substantial number of communications between the defendants' attorneys in this matter.

37. The common interest privilege "is an extension of the attorney-client privilege that allows individuals with a common interest in litigation to [communicate] with each other and their attorneys without waiving the attorney-client privilege." *Synovus Bank v. Karp*, 2013 U.S. Bankr. LEXIS 105772, *12, 2013 WL 3927604 (W.D.N.C. July 29, 2013).

38. For the common interest privilege to apply, the shared communication or information must first satisfy the attorney-client privilege or work product doctrine. *Id.* at *13 (citing authorities). In addition, the party asserting the common interest privilege must also

demonstrate that "'(1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of an in furtherance of the joint legal effort, and (3) the privilege has not been waived.'" *Id.* (citing *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 243 (E.D.N.C. 2010)).

39. A party cannot establish a common interest "by relying solely on counsel's conclusory allegation that the communications were privileged based on the common interest in the litigation." *Id.* (citations omitted).

40. Rather, the proponent of the privilege has the burden of demonstrating its applicability. *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986); *see also Billips v. Benco Steel, Inc.*, 2011 U.S. Dist. LEXIS 101447, *3, 2011 WL 4005933 (W.D.N.C. Sept. 8, 2011) ("the burden of proof is with a party objecting to discovery to establish that the requested production should not be permitted"). As stated in greater detail by the Middle District of North Carolina:

> It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all. [The proponent] is required to disclose the identity and position of all in attendance at the joint meetings, and to establish that the meetings were, in fact, between attorneys and their respective "corporate clients," as opposed to simply witnesses. Additionally, [the proponent] is obligated to explicitly define the nature and scope of the interest (identical or merely similar) it allegedly has in common … and specify the extent any legal interests overlapped with commercial interests of other conversations.

*Byrnes*, 111 F.R.D. at 71-72 (citations omitted).

41. Thus, the proponent must establish, in detail, that the parties have a "common interest about a legal matter." *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 124 (4th Cir. 1994). It is insufficient to satisfy this high bar that attorneys for different clients merely possess "a shared desire to see the same outcome in a legal matter." *In re Pacific Pictures Corp.*,

679 F.3d 1121, 1129 (9th Cir. 2012).  The communication at issue must instead be made in pursuit of a demonstrated, joint strategy and in accordance with an actual agreement.  *Id.*

42.    CCSD's conclusory statement in its affidavit that it has withheld communications that are "protected by the common interest doctrine" falls far short of the detailed, factual foundation necessary to support a claim of common interest privilege pursuant to *Sweeney*, *Byrnes*, and *Billips*, *supra*.  CCSD has made no effort to establish the contours of the defendants' alleged agreement, to produce evidence of the agreement's existence, or to define their allegedly shared interest.

43.    Moreover, CCSD cannot establish that the three defendants actually share an identical legal interest in this matter.  The HOA was merely a pre-petition creditor of the Debtor seeking to collect a nominal claim.  CCSD, on the other hand, asserts record title to the disputed real estate as the prevailing buyer at a foreclosure sale.  Tellingly, CCSD has also proposed to unilaterally resolve this litigation -- without the participation of either of its co-defendants.  *See Motion to Approve Settlement* [Doc. 45] (further demonstrating the distinct nature of its interest as compared to that of BSB or the HOA).

44.    For its part, BSB served as a fiduciary to the Debtor and the HOA in its role as foreclosure trustee, with unique legal obligations that neither the HOA nor CCSD possessed.  BSB has also asserted that, unlike CCSD, it cannot be liable in this matter because it did not receive a transfer from the Debtor at all.

45.    Thus, the *legal* interests of the various defendants in the outcome of this litigation are starkly different from one another.  They may share a common desire to see the Debtor lose, but the impacts upon each if he is successful are very different.  As a result, the defendants do not share an identical *legal* interest that supports a claim of common interest privilege.  *See*

*ServiceMaster of Salina, Inc. v. United States*, 2012 U.S. Dist. LEXIS 53399, *11-12, 2012 WL 1327812 (D. Kan. April 17, 2012) (finding no common interest when litigation would not have identical tax impact on party opposing discovery as it would have on litigation plaintiffs).

46.     The documents and/or communications CCSD seeks to exclude from discovery are not subject to a valid claim of common interest privilege, and it waived any other protection that might be afforded to those materials when they were shared with the other defendants.

47.     The Debtor therefore requests that the Court order CCSD to produce those materials it incorrectly contends are protected by the common interest privilege.

### *Exclusion of Materials Not Timely Produced*

48.     Finally, as noted above, CCSD provided an affidavit in an attempt to show that all documents – other than those withheld for specific reasons – have been produced in response to the Debtor's discovery requests.  *See* Exhibit E, *Aff. of Suresh Devireddy*.  However, the affidavit vaguely states no other documents have been "knowingly" withheld, and that if still other responsive documents come to CCSD's attention in the future, they will be "promptly produced or the privilege log will be updated …"

49.     CCSD has already supplemented its discovery responses and document productions on three separate occasions in response to deficiency letters from the Debtor.  After multiple hearings before the Court, discovery has now closed except for pending motions to compel and a narrow class of depositions that may be conducted by the Debtor.  *See Order on Continued Scheduling Conference and Related Matters* [Doc. 64].

50.     The Debtor will be prejudiced in the prosecution of his case if CCSD is permitted to untimely modify or supplement its discovery responses yet again in the future, as suggested in

its affidavit. "Courts regularly conclude that untimely productions after the close of discovery are not harmless." *Prakhin v. United States*, 164 Fed. Cl. 440, 453 (2023) (citing authorities).

51.     While parties have an ongoing duty to supplement incomplete or incorrect discovery under Federal Rule 26, such supplementation must nevertheless be made "in a timely manner." Fed. R. Civ. P. 26(e).

52.     The facts pertinent to this litigation occurred during March of 2022 to April of 2023.   The discovery requests at issue seek information from that period or prior thereto. Clearly, CCSD is already in possession of any materials created during these timeframes that are responsive to the Debtor's requests.  Parties have an affirmative duty during the discovery period to diligently obtain, prepare, and provide responsive information.  *See Fidlar Techs. v. LPS Real Estate Data Solutions, Inc.*, 2015 U.S. Dist. LEXIS 671, *9, 2015 WL 109835 (C.D. Ill. Jan. 6, 2015) (excluding supplemental evidence of damages in possession of party but not produced until after close of discovery).   There is no reasonable justification for CCSD's inability to provide full and complete responses in a timely manner.[1]

53.     The appropriate remedy for a party's failure to timely produce information in its possession during discovery is exclusion of the undisclosed materials as evidence under Federal Rule 37(c)(1).  *See In re Diversified Mercury Communications, LLC*, 2022 Bankr. LEXIS 3075, *9-10 (Bankr. D. Del. Oct. 31, 2022).[2]  In excluding responsive evidence produced only weeks before trial, the *Diversified Mercury* court noted that the delay in production severely prejudiced the opposing party by subjecting him to unfair surprise and effectively eliminating his ability to conduct discovery on the newly provided evidence.  *Id.* at 10-11.

---

[1] Indeed, CCSD contends in its affidavit that it has diligently undertaken "exhaustive" searches and review of its files and communications in response to the Debtor's discovery requests.

[2] Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required by Rul 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

54.    The Debtor will be exposed to identical prejudice if CCSD and the other defendants are not required to produce all responsive information by the hearing in this matter. CCSD has enjoyed ample time to provide any and all discovery responses, and the Debtor should not be presented with still more evidence after the close of discovery, and perhaps after completion of his depositions, but shortly before any dispositive hearings.

55.    The Debtor therefore requests that CCSD be prohibited from introducing responsive materials as evidence in this case to the extent not produced to the Debtor on or before April 3, 2024 (subject to the Court's ruling on this motions to compel discovery).

## CERTIFICATION

56.    The Debtor certifies that he has in good faith conferred or attempted to confer with CCSD in an effort to obtain the discovery sought herein without court action.

## CONCLUSION

WHEREFORE, the Debtor prays the Court for entry of an Order:

A.    Compelling CCSD to fully respond to Request for Production No. 7;

B.    Compelling CCSD to produce documents it incorrectly contends are subject to immunity from discovery by the attorney-client privilege, the work product immunity, and/or the common interest privilege;

C.    Overruling CCSD's objections with respect to the foregoing materials;

D.    Prohibiting CCSD from introducing information not timely produced as evidence;

E.    Awarding the Debtor his fees and costs associated with the filing and prosecution of this motion; and

F.    Granting such other relief as the Court deems just and proper.

Dated:  Charlotte, North Carolina
        March 26, 2024

**MOON WRIGHT & HOUSTON, PLLC**

          */s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
212 N. McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for Debtor-Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Motion to Compel Discovery from Defendant CCSD Properties, LLC* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on the date shown below.

Dated: Charlotte, North Carolina
March 26, 2024

**MOON WRIGHT & HOUSTON, PLLC**

       */s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
212 N. McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone: (704) 944-6560
Facsimile: (704) 944-0380
*Counsel for Debtor-Plaintiff*