IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **LEVANDER L. WATSON, JR.,** | ) | Chapter 13 |
| | ) | |
| | ) | Case No. 23-30536 |
| _____Debtor._ | ) | |
| | ) | |
| **LEVANDER L. WATSON, JR. and** | ) | |
| **JENNY P. HOLMAN, Chapter 13 Trustee for** | ) | |
| **the Bankruptcy Estate of Levander L. Watson,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 23-03028 |
| | ) | |
| **FOREST POND HOMEOWNERS** | ) | |
| **ASSOCIATION, INC., BLACK SLAUGHTER** | ) | |
| **& BLACK, P.A.**; **and CCSD** | ) | |
| **PROPERTIES, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO COMPEL DISCOVERY FROM**
**<u>FOREST POND HOMEOWNERS ASSOCIATION, INC.</u>**

Debtor-Plaintiff Levander L. Watson, Jr. (the "Debtor") hereby moves the court pursuant

to Federal Rules of Civil Procedure 26, 33, 34, and 37 (made applicable to this adversary

proceeding by Bankruptcy Rules 7026, 7033, 7034, and 7037) for the entry of an order compelling

defendant Forest Pond Homeowners Association, Inc. ("HOA") to fully respond to _his First Set of_

_Interrogatories and Request for Production of Documents_, and awarding the Debtor the attorneys'

fees and costs he incurred in bringing this motion.  In support of his motion, the Debtor shows the

Court as follows:

**BACKGROUND**

1.      The Debtor purchased a house and lot located at 6308 Forest Pond Drive, Charlotte, North Carolina (the "Property") in December of 2011, where he has continuously resided since that time.

2.      The Property is encumbered by a deed of trust in favor of Wells Fargo Bank, N.A., securing a debt of approximately $92,000.00.

3.      The Property has a tax value of $328,100.00.  Accordingly, the Debtor's equity interest in the Property is at least $236,000.00.

4.      The HOA commenced a foreclosure action against the Property in Mecklenburg County on March 2, 2022, to execute on a lien for assessments of $970.00 allegedly owed by the Debtor.

5.      The HOA retained Defendant Black Slaughter & Black, P.A. ("BSB") to serve as trustee to conduct the foreclosure.

6.      The Debtor attempted to pay the full amount claimed by the HOA to BSB on two occasions in May and June of 2022.  In both instances, the Debtor had sufficient funds in his checking account to pay the asserted debt in full, and the Debtor communicated to representatives of BSB that he wished to do so.  On both occasions BSB accepted funds from the Debtor's account via debit card.  The Debtor understood these debits, in the total amount of $2,066.48, satisfied the entire indebtedness asserted by the HOA.

7.      However, a foreclosure hearing took place eight months' later on February 27, 2023, at which time the clerk authorized a sale of the Property.  BSB then auctioned the Property on or about April 20, 2023.  Upon information and belief, Defendant CCSD Properties, LLC

("CCSD") submitted the highest bid of $2,359.23 on April 21, 2023. BSB subsequently deeded the Property to CCSD on June 1, 2023.

8.    The Debtor did not learn about the purported sale of his Property until after the statutory 10-day upset period.

9.    The Debtor filed for relief under Chapter 13 of the Bankruptcy Code in this Court on August 2, 2023 (the "Petition Date"). He then worked with the Chapter 13 trustee to file the instant adversary proceeding on August 8, 2023, challenging the foreclosure sale as a fraudulent transfer.

### THE DEBTOR'S DISCOVERY REQUESTS

10.    The Debtor timely served his *First Set of Interrogatories and Request for Production of Documents* upon the HOA on November 10, 2023, seeking information regarding persons with knowledge of the facts alleged in the parties' pleadings, expert witness information, information regarding the parties' interactions prior to the alleged sale, information and documentation regarding the authorization by the HOA of the foreclosure, and accountings of amounts purportedly owed by the Debtor.[1]

11.    The HOA served its *Response of Forest Pond Homeowners Association, Inc. to First Set of Interrogatories and Request for Production from Plaintiff* (the "Initial Responses") on January 8, 2024.

12.    The Initial Responses were accompanied by a limited document production. This production included only a handful of items consisting primarily of publicly available documents, including among other things, the recorded deed of trust on the Property for the benefit of the

---

[1] The parties' formal discovery requests and responses are not attached as exhibits to this Motion but will be available at any hearing in this matter. The parties' correspondence regarding the requests and responses are attached as Exhibits A through D and are incorporated herein by reference.

Debtor's mortgage lender, a copy of the recorded HOA covenants, a copy of a recorded plat map, as well as the HOA's articles of incorporation, bylaws, and the HOA covenants.

13.  Finding the HOA's Initial Responses and document production incomplete, the Debtor's counsel sent a letter to the HOA's counsel on January 30, 2024, outlining the deficiencies with the HOA's Initial Reponses (the "First Deficiency Letter").  A true and accurate copy of the First Deficiency Letter is attached as Exhibit A and incorporated herein by reference.

14.  The deficiencies noted in the First Deficiency Letter included: (a) incomplete information related to identification of persons with knowledge of the case and of HOA board members; (b) unsubstantiated claims of attorney-client privilege; (c) evasive and unresponsive responses to requests to produce communications between the HOA and other third parties; (d) the failure to verify that its interrogatory responses were answered under oath; and (e) failure to produce relevant documentation, while vaguely claiming that this failure was due to "corrupted" or lost electronic files.

15.  In an effort to obtain information, both the Debtor and the HOA served subpoenas on Community Association Management, Ltd. ("CAM"), which had served as the HOA's management company. [Docs. 43 & 44].  The Debtor also served a subpoena on the Red Rock Management Agency, LLC ("Red Rock"), which the HOA informed the Debtor took over management duties from CAM.

16.  After some initial resistance, CAM responded to these subpoenas by producing electronic files to both the Debtor and the HOA on February 19, 2024.  CAM's productions consisted of over 65,000 electronic files.[2]

---

[2] Given the size of CAM's production, the Debtor is still reviewing the documents.  So far, however, the Debtor's efforts have revealed that the overwhelming majority of the documents produced are in no way related to the Property, the Debtor, or of facts relevant in this dispute.

17. After receiving the documents from CAM, the HOA served its *Supplemental Response of Forest Pond Homeowners Association, Inc. to First Request for Interrogatories and Request for Production from Plaintiff* (the "Supplemental Responses") on March 4, 2024. The Supplemental Responses were sent to the Debtor's attorney via U.S. Mail and electronic mail.

18. The Supplemental Responses fully resolved one of the deficiencies identified in the Debtor's First Deficiency Letter—the HOA provided more complete identification of the members of its Board of Directors for the years from 2020 through 2023, including the dates each member served on the board and each member's mailing address. The Supplemental Responses failed to adequately address the remainder of the Debtor's concerns.

19. In an effort to resolve the shortcomings with the HOA's discovery responses, the Debtor sent the HOA a second letter on March 6, 2024 (the "Second Deficiency Letter"). A true and accurate copy of the Second Deficiency Letter is attached as Exhibit B and incorporated herein by reference.

20. The Second Deficiency Letter pointed out that the Supplemental Responses were still deficient in many respects.

21. The HOA's updated response to Interrogatory No. 2 still failed to identify "all persons with knowledge of the facts alleged in the pleadings in this case." Rather than providing names and contact information for any such people, the Supplemental Responses merely stated that unidentified board members of the HOA, unidentified employees of BSB, and the Debtor have knowledge of the allegations contained in the pleadings.

22. In response to Requests for Production Nos. 13 & 14 seeking communications between the HOA and BSB regarding the Debtor or the Property, the Supplemental Responses repeated an unfounded privilege objection while also claiming that all responsive communications

had been provide despite the objections.  The Second Deficiency Letter pointed out that this response was confusing because the assertion of the attorney-client privilege necessarily suggests that some documents have been withheld, but the response was not accompanied by a privilege log identifying any such documents.

23.     More problematically, the HOA had not produced responsive documents with the Supplemental Responses.  The Second Deficiency Letter asked the HOA to explicitly withdraw its privilege claim and provide copies of responsive documents, or alternatively, provide a detailed privilege log.

24.     In response to Requests for Production Nos. 17 & 18 seeking communications between the HOA and any third parties regarding the Debtor or the Property, the HOA's written Supplemental Responses indicated that any such communications would have been between the HOA's management company and or attorneys.  They further claim that no communications exist, other than those already produced.   But as the Second Deficiency Letter pointed out, no communication had been produced.  The Second Deficiency Letter therefore asked the HOA to supplement this response to clarify by stating either that no communications exist or by producing such communications.

25.     The HOA's Supplemental Responses were similarly confusing with their written response to Request for Production No. 21, which sought invoices or payment requests sent by the HOA to BSB.  The Supplemental Responses claims that "[n]o invoices have been provided by the previous management company. . . ." and also that the information has already been provided to the Debtor by BSB.  As explained in the Second Deficiency Letter, the Debtor could not ascertain whether the HOA's reply was saying whether there were no responsive documents, whether the HOA couldn't obtain such documents for some reason, or whether the HOA was claiming that the

Debtor was required to try to obtain the HOA's communications from BSB, for some reason.  The Supplemental Responses also left the Debtor unsure of what company the HOA was referring to as "the previous management company."  The Second Deficiency Letter requested that the HOA amend its response to clarify its answer.

26.     The HOA also claimed that it could not yet produce all invoices or payment requests received by the HOA from BSB for the relevant time period in response to Request for Production No. 22.  The HOA asserted that the responsive documents were damaged, corrupted, or lost when sent from the HOA's prior management company to its current company, and that it was still working on recovering such documents.  The Second Deficiency Letter requested that the HOA provide an explanation under oath of what happened to these allegedly damaged or missing files, provide some evidence of its explanation, and explain what steps the HOA has taken to recover the missing documentation.

27.     The email transmitting the Supplemental Responses to the Debtor's counsel included a link which purported to be to a supplemental document production.  The Second Deficiency Letter informed HOA's counsel that there were no new documents available through that link.  The link only led to a copy of the written Supplemental Responses.

28.     Finally, as with the HOA's Initial Responses, the Supplemental Responses were not verified, as required by the Federal Rules of Civil Procedure.

29.     Counsel for the HOA responded to the Second Deficiency Letter via letter dated February 12, 2024[3] and transmitted to the Debtor's counsel via email received on March 7, 2024 (the "HOA Letter Response").  A true and accurate copy of the HOA Letter Response is attached as Exhibit C and incorporated herein by reference.

---

[3] Debtor's counsel believe this date to be merely a scrivener's error.

30.     Included in the email transmitting the HOA Letter Response was a link to a supplemental document production.  The supplemental document production included:

a.  copies of meeting minutes from three (3) meetings of the HOA's board of directors;

b.  a copy of the meeting minutes for the 2020 annual meeting of the HOA;

c.  a copy of the case file for an earlier foreclosure case bearing case number 16-SP-4786;

d.  two emails reflecting communications between BSB and the HOA or its agents; and

e.  documents containing communications between the HOA or its agents and both the prior owner of the Property and the Debtor.

31.     The HOA Letter Response and the supplemental production failed to resolve all of the deficiencies with the HOA's discovery responses and document productions.

32.     In the HOA Letter Response regarding its answer to Interrogatory No. 2 seeking the identification of all the people with knowledge of the facts alleged in the pleadings, the HOA now seems to claim that it does not know the identity of any individuals other than the members of its board of directors, which were disclosed in the Supplemental Responses in the updated answer to Interrogatory No. 5.

33.     In response to Requests for Production Nos. 13 & 14 (seeking communications between the HOA and BSB regarding the Debtor or the Property), the HOA again points to BSB or its management companies as the available sources of this information.  The HOA also seems to claim that the CAM production consists of the entire universe of possibly responsive documents in the HOA's possession.  Finally, the HOA purports to waive any attorney client privilege to any documents previously produced by BSB or CAM that are responsive to these requests, though it reserves the right to review any documents subsequently produced by CAM for privilege issues, should any such documents subsequently be produced by CAM.

34.     As to the requests for documents reflecting communications between the HOA and a third party regarding the Property or the Debtor (Requests for Production Nos. 17 & 18), the HOA Letter Response asserts that the HOA is not aware of any such responsive documents, though it also contends that some communications may have occurred between CAM or BSB and some third party, but no records of such communication have been shared with the HOA.  At no time in the Initial Responses, the Supplemental Responses, or the HOA Letter Response has the HOA asserted a common interest privilege to any communications between counsel for the HOA, BSB, and/or CCSD as an objection to the Debtor's requests for production.

35.     In response to Requests for Production No. 21 & 22 seeking invoices or requests for payment sent by the HOA to BSB or received by the HOA from BSB, the HOA Letter Response again replied that it did not have any documents responsive to these requests other than those that have been produced by BSB during the course of discovery in this adversary proceeding.

36.     The HOA Letter Response did not address nor correct the omission of a verification or affirmation that the HOA's discovery responses were made under oath as required by Rule 33 of the Federal Rules of Civil Procedure.

37.     Shortly after sending the HOA Response Letter, counsel for the HOA, on behalf of Red Rock, followed up with a further letter dated March 15, 2024 (the "Red Rock Letter").  A true and accurate copy of the Red Rock Letter is attached as Exhibit D and incorporated herein by reference.

38.     The Red Rock Letter purports to present a more fulsome explanation of the HOA's earlier story regarding the documents that were damaged, corrupted, or lost when sent from the HOA's prior management company, CAM, to Red Rock.  Unfortunately, the Red Rock Letter raises additional questions.

39.     According to the Red Rock Letter, CAM initially transmitted certain documents to Red Rock including "a homeowner ledger (roster of owners in the community), [and] some financial records . . . ."  In addition, the letter states that CAM "provided a cd that allegedly contained the other records normally transmitted to the new management company."  It does not identify what those documents were.  According to the Red Rock Letter, that cd was damaged and could not be accessed by Red Rock.

40.     The Red Rock Letter further disclosed that CAM subsequently provided a zip drive full of documents to Red Rock, but those documents consisted only of those that had already been provided by CAM.  Presumably those documents consisted of the homeowner ledger and the unidentified financial records previously transmitted from CAM to Red Rock.

41.     According to the Red Rock Letter, CAM admitted to the HOA's counsel that the documents it provided to Red Rock did not include "communications, meeting minutes or other information."  The letter is unclear about (a) whether such documents exist but were not provided by CAM to Red Rock, (b) whether such documents were not provided because they do not exist, or (c) whether such documents consist solely of the minutes from three (3) meetings of the HOA's board of directors and the copy of the meeting minutes for the 2020 annual meeting of the HOA which the HOA provided to the Debtor in conjunction with its HOA Letter Response.

## RELIEF REQUESTED

42.     The Debtor requests entry of an order: (a) compelling the HOA to fully and clearly respond to Requests for Production Nos. 13-14 & 17-18; (b) compelling the HOA to submit verifications that its Initial Responses and Supplemental Responses were made under oath as required by the Federal Rules; (c) excluding information not timely produced from admission as

evidence by the HOA; and (e) awarding the Debtor his fees and costs associated with the filing and prosecution of this motion.

**BASIS FOR RELIEF REQUESTED**

***Requests for Production Nos. 13-14 & 17-18***

43.     The Court should enter an order requiring the HOA to fully and clearly respond to Requests for Production Nos. 13-14 & 17-18.

44.     The Debtor's Request for Production No. 13 requires the HOA to produce copies of "[a]ll documents containing or memorializing communications between the [HOA] and BSB and/or any of its attorneys, members, employees, or agents regarding the Property from May 12, 2021, through the present."  Similarly, Request for Production No. 14 requires the production of all such documents regarding the Debtor, for the same time period.

45.     The Debtor's Request for Production No. 17 requires the HOA to produce copies of "[a]ll documents containing or memorializing communications between the [HOA] and any other person or entity regarding the Property from January 1, 2020, through the present." Request for Production No. 18 demands the production of all such documents regarding the Debtor.

46.     While the HOA initially objected to Requests for Production Nos. 13 & 14 on the grounds of attorney/client privilege, the HOA Letter Response subsequently informed the Debtor that the HOA was waiving that privilege. *Ex. C* at 2.  The HOA has not claimed any applicable privilege in conjunction with Requests for Production Nos. 17 & 18, including but not limited to the common interest privilege that has been asserted by BSB and CCSD.

47.     Despite the waiver of attorney/client privilege and the common interest privilege, the only responsive documents produced by the HOA include two emails between the HOA and BSB.  However, privilege logs submitted by BSB and CCSD during this adversary proceeding

indicate that other communications exist between the HOA, BSB, and CCSD exist, at the very least.

48.     Accordingly, the Court should enter an order requiring the HOA to fully and completely answer Requests for Production Nos. 13-14 & 17-18 and produce all documents responsive thereto.

### *Verification of the HOA's Discovery Responses is Required*

49.     Pursuant to Rule 33(b)(3), a party must answer each interrogatory "separately and fully in writing <u>under oath</u>."  Fed. R. Civ. P. 33(b)(3) (emphasis supplied).  Likewise, those answers must be signed by the person making them, while any objections must be signed by the attorney.  *Id*. at 33(b)(5).

50.     Rule 33 thus requires that "interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney." *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) (citations omitted).  This requirement "serves the critical purpose of ensuring that the responding party attests to the truth of the responses.  An attorney's communication, e-mail or otherwise, does not do that, . . ." *Id.*

51.     The significance of this requirement is seen in the function of Rule 33(c), which provides that "interrogatory answers may be used at trial 'to the extent allowed by the Federal Rules of Evidence.'"  *Id*. (quoting Fed. R. Civ. P. 33(c)).  Allowing the substitution of "an attorney's communication for the party's sworn statement would undermine that important function and effectively convert the attorney into a witness in the matter." *Id*. (citations omitted).

52.     Under the plain language of Rule 33, there is no acceptable alternative to the requirement that a party answer its interrogatory responses under oath.  The HOA has failed to do that.  Consequently, the Court should enter an order compelling the HOA to submit a verification

signed by the person who answered the interrogatories that the answers in its Initial Responses and Supplemental Responses have been made under oath.

### *Exclusion of Materials Not Timely Produced*

53.    The HOA has already supplemented its discovery responses and document productions in response to deficiency letters from the Debtor.  After multiple hearings before the Court, discovery has now closed except for pending motions to compel and a narrow class of depositions that may be conducted by the Debtor.  *See Order on Continued Scheduling Conference and Related Matters* [Doc. 64].

54.    The Debtor will be prejudiced in the prosecution of his case if the HOA is permitted to untimely modify or supplement its discovery responses yet again in the future.  "Courts regularly conclude that untimely productions after the close of discovery are not harmless."  *Prakhin v. United States*, 164 Fed. Cl. 440, 453 (2023) (citing authorities).

55.    While parties have an ongoing duty to supplement incomplete or incorrect discovery under Federal Rule 26, such supplementation must nevertheless be made "in a timely manner."  Fed. R. Civ. P. 26(e).

56.    The facts pertinent to this litigation occurred during March of 2022 to April of 2023.  The discovery requests at issue seek information from that period or prior thereto.  Clearly, the HOA is already in possession of any materials created during these timeframes that are responsive to the Debtor's requests.  Parties have an affirmative duty during the discovery period to diligently obtain, prepare, and provide responsive information.  *See Fidlar Techs. v. LPS Real Estate Data Solutions, Inc.*, 2015 U.S. Dist. LEXIS 671, *9, 2015 WL 109835 (C.D. Ill. Jan. 6, 2015) (excluding supplemental evidence of damages in possession of party but not produced until after

close of discovery).  There is no reasonable justification for the HOA's inability to provide full and complete responses in a timely manner.

57.     The appropriate remedy for a party's failure to timely produce information in its possession during discovery is exclusion of the undisclosed materials as evidence under Federal Rule 37(c)(1).  *See In re Diversified Mercury Communications, LLC*, 2022 Bankr. LEXIS 3075, *9-10 (Bankr. D. Del. Oct. 31, 2022).[4]  In excluding responsive evidence produced only weeks before trial, the *Diversified Mercury* court noted that the delay in production severely prejudiced the opposing party by subjecting him to unfair surprise and effectively eliminating his ability to conduct discovery on the newly provided evidence.  *Id.* at 10-11.

58.     The Debtor will be exposed to identical prejudice if the HOA and the other defendants are not required to produce all responsive information by the hearing in this matter. The HOA has enjoyed ample time to provide any and all discovery responses, and the Debtor should not be presented with still more evidence after the close of discovery, and perhaps after completion of his depositions, but shortly before any dispositive hearings.

59.     Accordingly, the Debtor requests that the HOA be prohibited from introducing responsive materials as evidence in this case to the extent not produced to the Debtor on or before April 3, 2024 (subject to the Court's ruling on this motion to compel discovery).

### CERTIFICATION

60.     The Debtor certifies that he has in good faith conferred or attempted to confer with the HOA in an effort to obtain the discovery sought herein without court action.

---

[4] Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required by Rul 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

**CONCLUSION**

WHEREFORE, the Debtor prays the Court for entry of an Order:

A.      Compelling the HOA to fully respond to Requests for Production Nos. 13-14 & 17-18;

B.      Compelling the HOA to provide a signed verification that its earlier discovery responses were made under oath;

C.      Prohibiting the HOA from introducing information not timely produced as evidence;

D.      Awarding the Debtor his fees and costs associated with the filing and prosecution of this motion; and

E.      Granting such other relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
       March 26, 2024

**MOON WRIGHT & HOUSTON, PLLC**

_/s/ Richard S. Wright_
Richard S. Wright (Bar No. 24622)
212 N. McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for Debtor-Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Motion to Compel Discovery from Forest Pond Homeowners Association, Inc.* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on the date shown below.

Dated:  Charlotte, North Carolina
        March 26, 2024

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
212 N. McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for Debtor-Plaintiff*